DAVID N. WOLF (6688)
LANCE SORENSON (10684)
JASON DUPREE (17509)
Assistant Utah Attorneys General
Office of the Utah Attorney General
P.O. Box 140856
Salt Lake City, Utah 84114-0856
Telephone: (385) 584-6509
dwolf@agutah.gov
lancesorenson@agutah.gov
jndupree@agutah.gov
*Counsel for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF UTAH

| | |
|---|---|
| PHARMACEUTICAL RESEARCH AND MANUFACTURERS OF AMERICA, <br><br> *Plaintiff*, <br><br> v. <br><br> DEREK BROWN, in his official capacity; and JOHN PIKE, in his official capacity, <br><br> *Defendants*. | **MOTION TO DISMISS** <br><br> Case No. 2:25-cv-00308-RJS-DAO <br><br> Judge Robert J. Shelby <br><br> Magistrate Judge Daphne A. Oberg |

**TABLE OF CONTENTS**

RELIEF SOUGHT AND GROUNDS FOR MOTION ................................................................... 1

BACKGROUND ........................................................................................................................ 2

    1.    Congress established Section 340B to shield Covered Entities from drug price increases and help Covered Entities reach more patients and provide more services ........ 2

    2.    The 340B Program regulates price, but not delivery .......................................................... 2

    3.    HRSA recognizes that a Covered Entity using multiple contract pharmacies helps fulfill the 340B Program's aims .................................................................................. 4

    4.    Drug manufacturers implement policies that prevent Covered Entities from serving patients in need ........................................................................................................ 5

    5.    Utah's Law ........................................................................................................................ 7

    6.    PhRMA's Lawsuit ............................................................................................................. 8

LEGAL STANDARD ............................................................................................................... 9

ARGUMENT ............................................................................................................................. 9

    1.    PhRMA fails to state a claim that SB69 is preempted ...................................................... 9

        1.1.    The presumption against preemption applies to all of PhRMA's claims ............... 10

        1.2.    SB69 is not field preempted .................................................................................11

        1.3.    PhRMA fails to show conflict preemption ............................................................ 16

            1.3.1.    SB69 does not expand the transactions triggering 340B pricing .............. 16

            1.3.2.    PhRMA's members can obtain claims data consistent with federal law... 17

            1.3.3.    SB69's enforcement of interference with contract pharmacy arrangements does not conflict with HHS' enforcement of pricing requirements ................................................................................................... 18

    2.    SB69 does not violate the Commerce Clause ................................................................. 20

    3.    SB69 is not unconstitutionally vague ............................................................................. 22

CONCLUSION......................................................................................................................... 25

**TABLE OF AUTHORITIES**

CASES

*AbbVie Inc. v. Fitch,*
  No. 1:24-CV-184-HSO-BWR, 2024 WL 3503965 (S.D. Miss. July 22, 2024) ........................ 7

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ............................................................................................................. 9

*Astra USA, Inc. v. Santa Clara Cnty., Cal.,*
  563 U.S. 110 (2011)............................................................................................................ 12

*AstraZeneca v. Fitch,*
  No. 1:24CV196-LG-BWR, 2024 WL 5345507 (S.D. Miss. Dec. 23, 2024)............................ 7

*Bradshaw v. Am. Airlines, Inc.,*
  123 F.4th 1168 (10th Cir. 2024)................................................................................. 9, 11, 13

*Cameron v. Johnson,*
  390 U.S. 611 (1968)............................................................................................................ 23

*Carolina Youth Action Project v. Wilson,*
  60 F.4th 770 (4th Cir. 2023)................................................................................................ 24

*Church of Jesus Christ of Latter-Day Saints Tithing Litig.,* No. 2:24-MD-03102-RJS-DAO,
  2025 WL 1135726, (D. Utah Apr. 17, 2025) ......................................................................... 9

*Day v. SkyWest Airlines,*
  45 F.4th 1181 (10th Cir. 2022)............................................................................................ 10

*Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Const. Trades Council,*
  485 U.S. 568 (1988) ........................................................................................................... 17

*Farina v. Nokia Inc.,*
  625 F.3d 97 (3d Cir. 2010).................................................................................................. 12

*Gillmor v. Thomas,*
  490 F.3d 791 (10th Cir. 2007)............................................................................................. 10

*Hillsborough Cnty., v. Automated Med. Lab'ys, Inc.,*
  471 U.S. 707 (1985) .............................................................................................. 10, 11, 13

*Kleinsmith v. Shurtleff,*
  571 F.3d 1033 (10th Cir. 2009).......................................................................................... 23

*Medtronic, Inc. v. Lohr*,
  518 U.S. 470 (1996) ........................................................................................................... 10

*Nat'l Fed'n of the Blind v. United Airlines Inc.*,
  813 F.3d 718 (9th Cir. 2016)............................................................................................. 12

*Nat'l Pork Producers Council v. Ross,*
  598 U.S. 356 (2023) ...................................................................................................... 20, 21

*Novartis Pharms. Corp. v. Johnson*,
  102 F.4th 452 (D.C. Cir. 2024)..................................................................................... 12, 13

*Novartis Pharms. v. Bailey*,
  No. 2:24-cv-04131-MDH, 2025 WL 489881 (W.D. Mo. Feb. 13, 2025)................................ 7

*Novartis Pharms. v. Fitch*,
  738 F. Supp. 3d 737 (S.D. Miss. 2024)............................................................................... 7

*O'Melveny & Myers v. F.D.I.C.*,
  512 U.S. 79 (1994) .............................................................................................................. 11

*PhRMA v. Fitch*,
  No. 1:24-CV-160-HSO-BWR, 2024 WL 3277365 (S.D. Miss. July 1, 2024) ......... 7, 20, 23, 25

*PhRMA v. McClain,*
  95 F.4th 1136 (8th Cir.), cert. denied, 145 S. Ct. 768 (2024)................................... 6, 14, 15, 19

*PhRMA v. Morrisey*,
  760 F. Supp. 3d 439 (S.D.W. Va. 2024)........................................................................ 7, 19

*PhRMA v. Murrill*,
  No. 6:23-cv-00997, 2024 WL 4361597 (W.D. La. Sept. 30, 2024) ................................Passim

*Ramsey Winch Inc. v. Henry*,
  555 F.3d 1199 (10th Cir. 2009).................................................................................... 10, 16

*Safe Streets All. v. Hickenlooper*,
  859 F.3d 865 (10th Cir. 2017)............................................................................................. 9

*Sanofi Aventis U.S. LLC v. United States Dep't of Health & Hum. Servs.*,
  58 F.4th 696 (3d Cir. 2023)..................................................................................... 12

*The Wilderness Soc. v. Kane County, Utah*,
  632 F.3d 1162 (10th Cir. 2011)............................................................................... 22

*United States v. Elliot*,
  2018 WL 11478272 (N.D. Ga. Aug. 8, 2018)........................................................... 24

*United States v. Gaudreau*,
  860 F.2d 357 (10th Cir. 1988)................................................................................. 22

*United States v. Graham*,
  305 F.3d 1094 (10th Cir. 2002)............................................................................... 23

*United States v. Hunter*,
  663 F.3d 1136 (10th Cir. 2011)............................................................................... 22

*United States v. Supreme Ct. of New Mexico*,
  839 F.3d 888 (10th Cir. 2016)........................................................................... 16, 19

*United States v. Texas*,
  97 F.4th 268 (5th Cir. 2024).................................................................................... 12

*United States v. Welch*,
  327 F.3d 1081 (10th Cir. 2003) abrogated on other grounds as recognized by *United States v. McBride*, 94 F.4th 1036, 1043 n.9 (10th Cir. 2024)........................................ 25

*United States v. Wenger*,
  292 F. Supp. 2d 1296 (D. Utah 2003), aff'd, 427 F.3d 840 (10th Cir. 2005) ............ 25

*US Airways, Inc. v. O'Donnell*,
  627 F.3d 1318 (10th Cir. 2010)................................................................................. 9

*Utah Coal. of La Raza v. Herbert*,
  26 F. Supp. 3d 1125 (D. Utah 2014)........................................................... 11, 12, 13

*Wisconsin Dept. of Health and Family Services v. Blumer*,
  534 U.S. 473 (2002) ............................................................................................... 11

*Wyo. Gun Owners v. Gray*,
  83 F.4th 1224 (10th Cir. 2023)................................................................................. 22

v

STATUTES

42 U.S.C. § 256b.................................................................................................................Passim

Utah Code § 31A-2-201(1) ........................................................................................................ 8

Utah Code § 31A-46-311 .................................................................................................Passim

Utah Code § 76-2-103(1) ........................................................................................................ 25

RULES

Federal Rule of Civil Procedure 12(b)(6) .............................................................................. 9

REGULATIONS

Notice Regarding Section 602 of the Veterans Health Care Act of 1992; Contract Pharmacy
    Services,
    61 Fed. Reg. 43,549 (Aug. 23, 1996) ............................................................................... 4

Notice Regarding Manufacturer Audit Guidelines and Dispute Resolution Process 0905-ZA-19
    61 Fed. Reg, 65,406, 65,409 (Dec. 12, 1996) .......................................................... 4, 18

S.B. 69 Medication Amendments .................................................................................Passim

Defendants Derek Brown, in his official capacity as Utah Attorney General, and Jon Pike, in his official capacity as Utah Insurance Commissioner, submit this Motion to Dismiss the Complaint pursuant to Rule 12(b)(6).

**RELIEF SOUGHT AND GROUNDS FOR MOTION**

The federal 340B Program requires drug manufacturers who choose to participate in Medicaid and Medicare to provide discounts on certain drugs to certain health care providers, known as Covered Entities. Covered Entities often contract with pharmacies to handle the dispensation of the 340B drugs because many Covered Entities do not have an in-house pharmacy. Or, some Covered Entities serve patients across multiple counties, and using multiple contract pharmacies allows the Covered Entities to provide their patients with easier access to necessary medications.

The 340B Program does not regulate or even address the delivery of 340B drugs to contract pharmacies. That's where Utah's Senate Bill 69 ("SB69") comes in. SB69 regulates drug distribution. SB69 requires drug manufacturers to comply with Covered Entities' instructions to deliver their purchased 340B drugs to designated contract pharmacies.

In its Complaint, Plaintiff PhRMA claims that SB69 is preempted by Section 340B. But SB69 doesn't regulate drug pricing. SB69 does not change any requirement of federal law. Compliance with both SB69 and federal law is not impossible because the laws regulate different things. PhRMA's preemption claims thus have no merit. Further, SB69 does not violate the Commerce Clause because SB69 does not advantage Utah commercial entities at the expense of out of state competitors. PhRMA's void for vagueness claim also fails. PhRMA claims that SB69 is unconstitutionally vague because SB69 does not define the term "interfere." Two courts have

1

already dismissed this same exact argument from PhRMA because the ordinary meaning of interference can be quickly ascertained from dictionaries. For these reasons, the Court should dismiss the Complaint for failure to state claims, as many other courts have done.

## BACKGROUND

**1.    Congress established Section 340B to shield Covered Entities from drug price increases and help Covered Entities reach more patients and provide more services**

Congress established Section 340B of the Public Health Services Act as a pharmaceutical pricing program that imposes ceilings on prices drug manufacturers may charge for medications sold to specified health-care facilities.[1] 42 U.S.C. § 256b. To participate in Medicare and Medicaid, drug manufacturers must opt into the 340B Program by signing a Pricing Agreement with the Secretary of the U.S. Department of Health and Human Services ("HHS").[2] The Agreement requires manufacturers to sell drugs at a discounted price to certain Covered Entities. 42 U.S.C. § 256b(a)(1). Covered Entities are defined by statute to include fifteen different types of public and not-for-profit hospitals, community centers, and clinics that are dominantly local facilities that provide medical care for the poor.[3] 42 U.S.C. § 256b(a)(4). Congress enacted Section 340B in response to pharmaceutical manufacturers increasing prices of drugs; Congress sought to protect Covered Entities from such price increases.[4]

**2.    The 340B Program regulates price, but not delivery**

The 340B Program has three components: 1) a cap on drug makers' prices; 2) restrictions on Covered Entities; and 3) compliance mechanisms for both Covered Entities and manufacturers.

---

[1] Compl., ECF No. 2, ¶¶ 2, 36.
[2] Compl., ECF No. 2, ¶ 50.
[3] Compl., ECF No. 2, ¶¶ 44-45.
[4] Compl., ECF No. 2, ¶¶ 37-38.

First, as to pricing: Section 340B requires manufacturers to sell drugs to Covered Entities at a discounted ceiling price, which is determined by a statutory formula.[5] 42 U.S.C. §§ 256b(a)(1)-(2), 1396r-8(c). Section 340B further mandates that discounted prices are only made available to Covered Entities.[6] *Id.* § 256b(a).

Second, 340B contains two provisions that prohibit Covered Entities from abusing their ability to obtain discounted drugs. Covered Entities cannot engage in diversion; meaning, they cannot "resell or otherwise transfer" discounted drugs "to a person who is not a patient of the entity."[7] *Id.* §256b(a)(5)(B). And Covered Entities cannot obtain duplicate discounts or rebates – they cannot obtain Medicaid rebates for drugs that they purchase at a 340B discount.[8] *Id.* §256b(a)(5)(A)(i).

Finally, the 340B Program includes compliance and enforcement mechanisms for pricing violations. HHS enforces drug manufacturers' duty to sell discounted drugs and Covered Entities' duties not to seek improper discounts or make improper resales.[9] *See id.* § 256b(d). Notably, all three components of the 340B Program speak to price.

When pricing, diversion, or discount disputes arise between manufacturers and Covered Entities, parties must go through HHS's dispute resolution process to resolve the issue.[10] 42 U.S.C. § 256b(d)(3). To use the dispute resolution process, manufacturers must first audit a Covered Entity, which federal law allows them to do.[11] *Id.* § 256b(a)(5)(C). And to conduct an audit, a manufacturer only needs to show "reasonable cause" that a Covered Entity may have

---

[5] Compl., ECF No. 2, ¶ 46.
[6] Compl., ECF No. 2, ¶ 47.
[7] Compl., ECF No. 2, ¶ 49.
[8] Compl., ECF No. 2, ¶ 60.
[9] Compl., ECF No. 2, ¶ 56.
[10] Compl., ECF No. 2, ¶ 53.
[11] Compl., ECF No. 2, ¶ 53, 133.

3

violated a requirement of Section 340B.[12] 61 Fed. Reg, 65,406, 65,409 (Dec. 12, 1996). HHS clarified that "reasonable cause" can be established without conditioning delivery of drugs on the provision of data, such as by showing "[s]ignificant changes in quantities of specific drugs ordered by a Covered Entity and complaints from patients/other manufacturers about activities of a covered entity."[13] *Id.* The Secretary of HHS is also authorized to audit Covered Entities.[14] 42 U.S.C. § 256b(a)(5)(C).

Drug manufacturers and Covered Entities that fail to comply can be fined or removed from the program.[15] Congress thus created a compliance and enforcement framework for violations of the discounted pricing requirements, but omitted delivery methods out of that system. While the text of Section 340B covers matters such as pricing, the 340B Program "is silent about delivery."[16]

3.     **HRSA recognizes that a Covered Entity using multiple contract pharmacies helps fulfill the 340B Program's aims**

Although some Covered Entities have in-house pharmacies, many do not. *See* Notice Regarding Section 602 of the Veterans Health Care Act of 1992; Contract Pharmacy Services, 61 Fed. Reg. 43,549, 43,550 (Aug. 23, 1996) (hereinafter "1996 Guidance").[17] Since the 1990s, Covered Entities have contracted with outside pharmacies to handle the acquisition, distribution, and dispensation of 340B drugs. The Health Resources and Services Administration, ("HRSA"), which is a unit of HHS that superintends the 340B Program, observed that most Covered Entities

---

[12] Compl., ECF No. 2, ¶ 133.
[13] Compl., ECF No. 2, ¶ 133.
[14] Compl., ECF No. 2, ¶ 86.
[15] Compl., ECF No. 2, ¶ 51.
[16] Compl., ECF No. 2, ¶ 95.
[17] The 1996 Guidance is a document PhRMA refers to in its Complaint. Compl, ECF No. 2, ¶ 68.

relied on contract pharmacies, while only four percent of such entities used in-house pharmacies. 1996 Guidance at 43,550.

HRSA issued guidance in 1996 initially stating that a Covered Entity may use one contract pharmacy. HRSA's August 1996 Guidance acknowledged that section 340B is silent as to permissible drug distribution systems. *Id.* at 43,549-50. The 1996 Guidance further recognized that Section 340B does not require a Covered Entity dispense drugs itself. *Id.* at 43,549. Therefore, "[i]t is clear that Congress envisioned that various types of drug delivery systems would be used to meet the needs of the very diversified group of 340B covered entities." *Id.*

The guidance further stated that Covered Entities maintain legal title to the 340B drugs. *Id.* at 43,552. HRSA's 1996 Guidance required that, in directing shipments to its contract pharmacy, the Covered Entity must retain title to the drugs and thus "be responsible" for any diversion or duplicate discounts. *Id.* at 43,553. Accordingly, a Covered Entity's use of a contract pharmacy "does not in any way extend this pricing to entities which do not meet program eligibility." *Id.* at 43,550. Instead, the pharmacy is authorized to "dispense 340B drugs to patients of the covered entity pursuant to a prescription." *Id.* Later, Covered Entities began using multiple contract pharmacies after HRSA issued guidance expressly endorsing Covered Entities' use of multiple contract pharmacies.[18]

### 4.    Drug manufacturers implement policies that prevent Covered Entities from serving patients in need

But large drug companies wanted to put a stop to Covered Entities contracting with outside pharmacies for the dispensation of 340B drugs to patients. For example, in October 2020,

---

[18] Compl., ECF No. 1, ¶ 65.

pharmaceutical company AstraZeneca implemented a policy that it would only delivery 340B drugs through a single contract pharmacy site for Covered Entities that do not have an in-house pharmacy.[19] Some drug manufacturers also created a policy requiring contract pharmacies to provide claims data in order for the manufacturers to delivery drugs purchased through the 340B program to those pharmacies.[20]

In order to protect wider patient access to drugs, states began to enact legislation to address the delivery gap left open by federal law. Arkansas was the first, enacting legislation in 2021. Kansas, Louisiana, Maryland, Minnesota, Mississippi, Missouri, and West Virginia quickly did the same.

Drug manufacturers have challenged almost all of these state laws, claiming these laws are unconstitutional. All but one court have found that these claims, including preemption claims, have no merit. For example, in *PhRMA v. McClain*, the Eighth Circuit held that Plaintiff Pharmaceutical Research and Manufacturers of America's ("PhRMA") preemption claims had no merit and affirmed summary judgment to the state defendant. 95 F.4th 1136, 1140 (8th Cir.), cert. denied, 145 S. Ct. 768 (2024). Because "the text of 340B is silent about delivery," "the 340B program is not so pervasive … that Congress left no room for the States to supplement it." *Id.* at 1143 (cleaned up). Arkansas' law was therefore not preempted. *Id.* The U.S. District Court for the Western District of Louisiana also granted summary judgment against PhRMA on all of its preemption and vagueness claims. *PhRMA v. Murrill*, No. 6:23-cv-00997, 2024 WL 4361597 (W.D. La. Sept. 30, 2024).

---

[19] *AstraZeneca Pharms. LP v. Becerra*, First Am. Compl. ¶¶ 48-52, ECF No. 13, No. 1:21-cv-00027-LPS (D. Del. Feb. 12, 2021) (cited in Pl.'s Compl., ECF No. 1, ¶ 87).
[20] *See* Compl., ECF No. 1, ¶ 92.

Elsewhere, the Western District of Missouri dismissed preemption claims at the pleading stage. *Novartis Pharms. v. Bailey*, No. 2:24-cv-04131-MDH, 2025 WL 489881 (W.D. Mo. Feb. 13, 2025). The District of Maryland denied a preliminary injunction. Order Den. Pl.'s Mots. Prelim. Inj., *Novartis Pharms.*, No. 1:24-cv-01557 (D. Md. Sept. 5, 2024), ECF No. 57. And the Southern District of Mississippi has denied four separate motions for preliminary injunction. *Novartis Pharms. v. Fitch*, 738 F. Supp. 3d 737, 744 (S.D. Miss. 2024); *PhRMA v. Fitch*, No. 1:24-CV-160-HSO-BWR, 2024 WL 3277365 (S.D. Miss. July 1, 2024); *AbbVie Inc. v. Fitch*, No. 1:24-CV-184-HSO-BWR, 2024 WL 3503965 (S.D. Miss. July 22, 2024); *AstraZeneca v. Fitch*, No. 1:24CV196-LG-BWR, 2024 WL 5345507 (S.D. Miss. Dec. 23, 2024). Only the Southern District of West Virginia has granted a preliminary injunction. *PhRMA v. Morrisey*, 760 F. Supp. 3d 439 (S.D.W. Va. 2024).

**5.    Utah's Law**

In 2025, Utah joined the growing national movement to preserve patient access to 340B drugs by enacting Senate Bill 69, codified at Utah Code § 31A-46-311. SB69 received enormous bipartisan support in the Utah Legislature, passing the house unanimously[21] and receiving just one nay vote in the senate.[22] SB69 prohibits manufacturers from restricting or prohibiting 340B drugs from being sent to locations authorized by Covered Entities. Utah Code § 31A-46-311(2)(a)(iii). This provision prohibits manufacturers from conditioning their 340B drug sales on a Covered Entity's agreement to use only one contract pharmacy.

SB69 further prohibits manufacturers from requiring Covered Entities to submit claims data, utilization data, or information about its contracts as a condition of the manufacturer's

---

[21] https://le.utah.gov/DynaBill/svotes.jsp?sessionid=2025GS&voteid=1210&house=H
[22] https://le.utah.gov/DynaBill/svotes.jsp?sessionid=2025GS&voteid=1613&house=S

340B drug offer to that entity. *Id.* § 31A(2)(b)(ii). The Utah Legislature ensured that this provision would not conflict with Section 340B. *Id.* ("unless the data or information sharing is required by federal law."). SB69 is administered and enforced by the Utah Insurance Commissioner, because SB69 is codified in the Insurance Code. Utah Code § 31A-2-201(1) ("The commissioner shall administer and enforce this title."); § 31A-46-311. SB69 limits enforcement for violations of just SB69 itself; SB69 does not authorize the Insurance Commissioner to enforce purported violations of the 340B Program. *Id.* § 31A-46-401. SB69 instructs that "[n]othing in this section is to be construed to conflict with federal law." Utah Code § 31A-46-311.

### 6.    PhRMA's Lawsuit

Plaintiff PhRMA now brings this lawsuit, challenging the constitutionality of SB69. PhRMA is an association that represents drug manufacturers.[23] In Claim I of its Complaint, PhRMA claims that SB69's prohibitions on restricting drug delivery are field preempted by Section 340B's regulation of drug pricing. PhRMA further brings three different conflict preemption claims in Claim I. PhRMA begins by misconstruing SB69 to allege that SB69 expands Section 340B's scope of drug discounts. PhRMA next alleges that enforcement of SB69's drug delivery provisions conflict with HHS's enforcement of Section 340B's pricing requirements. Finally, PhRMA claims that SB69's prohibition of manufacturers conditioning receipt of a 340B drug on the provision of data conflicts with federal law. In Claim II, PhRMA alleges that SB69 violates the Dormant Commerce Clause. And in Claim III of its Complaint, PhRMA claims that SB69 is unconstitutionally vague because the term "interfere" is not defined in SB69. Each of these claims lack merit and should be dismissed.

---

[23] Compl., ECF No. 2, ¶ 27.

## LEGAL STANDARD

Defendants bring their Motion pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted. This Court recently explained the legal standard applicable to evaluating a Rule 12(b)(6) motion in *In re Church of Jesus Christ of Latter-Day Saints Tithing Litig.*, No. 2:24-MD-03102-RJS-DAO, 2025 WL 1135726, (D. Utah Apr. 17, 2025). As stated by this Court:

> To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead sufficient factual allegations to state a claim to relief that is plausible on its face. A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. In other words, a plaintiff must establish more than a sheer possibility that a defendant has acted unlawfully. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements are insufficient.

*Id.* at *7 (cleaned up).

Here, PhRMA's Complaint often mischaracterizes the scope and effect of SB69. These characterizations of SB69 are legal conclusions and thus are not entitled to any deference. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017).

## ARGUMENT

### 1.    PhRMA fails to state a claim that SB69 is preempted

All of PhRMA's preemption claims in Claim I should be dismissed. Under the Supremacy Clause, Congress may enact federal laws that preempt state laws. *Bradshaw v. Am. Airlines, Inc.*, 123 F.4th 1168, 1173 (10th Cir. 2024). There are three types of preemption: 1) express preemption; 2) field preemption; and 3) conflict preemption. *US Airways, Inc. v. O'Donnell*, 627 F.3d 1318, 1324 (10th Cir. 2010). PhRMA does not claim SB69 is expressly preempted; Claim I

9

alleges field preemption and conflict preemption. But before diving into the particulars of PhRMA's claims, this Court must apply the presumption against preemption.

### 1.1.    The presumption against preemption applies to all of PhRMA's claims

Bring preemption claims, PhRMA "faces an uphill battle." *Hillsborough Cnty., v. Automated Med. Lab'ys, Inc.*, 471 U.S. 707, 714 (1985). The first hurdle PhRMA must overcome is that the Tenth Circuit gives state "statutes a presumption of constitutionality." *Gillmor v. Thomas*, 490 F.3d 791, 798 (10th Cir. 2007). The second obstacle to PhRMA's claims is that the specific presumption against preemption applies here. Because PhRMA is "the party claiming preemption, it bears the burden of showing with specificity that Congress intended to preempt state law." *Day v. SkyWest Airlines*, 45 F.4th 1181, 1184 (10th Cir. 2022) (cleaned up). Any preemption analysis "begin[s] with the assumption that the historic police powers of the States are not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Ramsey Winch Inc. v. Henry*, 555 F.3d 1199, 1204 (10th Cir. 2009) (cleaned up). "This assumption applies with greater force when the alleged conflict is in an area traditionally occupied by the States." *Id.*

This presumption against preemption applies to "state or local regulation of matters related to health and safety." *Hillsborough Cnty.*, 471 U.S. at 715. "Because these are primarily, and historically, matters of local concern, the States traditionally have had great latitude under their police powers to legislate as to the protection of . . . health [and] comfort." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996) (cleaned up).

SB69 promotes patient access to medications, especially poor and rural patients, and enables healthcare providers that serve low-income and rural communities to expand and

improve services. SB69 is therefore a state regulation of matters related to health and safety.

Accordingly, PhRMA "must thus present a showing of" preemption "that is strong enough to overcome the presumption that state and local regulation of health and safety matters can constitutionally coexist with federal regulation." *Hillsborough Cnty.*, 471 U.S. at 716. "Cooperative federalism" allows states and the federal government to work together to advance government interests, such as access to healthcare. *See, e.g., Wisconsin Dept. of Health and Family Services v. Blumer*, 534 U.S. 473, 495 (2002) ("The Medicaid statute . . . is designed to advance cooperative federalism").

### 1.2.    SB69 is not field preempted

In Claim I, PhRMA first claims that SB69 is field preempted. Field preemption only "exists where a framework of regulation of a field is so pervasive that it leaves no space for state supplementation or where the federal interest is so dominant that the existence of a federal scheme can be assumed to preclude enforcement of state laws on the same subject." *Bradshaw*, 123 F.4th at 1173. "Matters left unaddressed, however, in a 'comprehensive and detailed' regulatory 'scheme are presumably subject to the disposition' of state law." *Utah Coal. of La Raza v. Herbert*, 26 F. Supp. 3d 1125, 1132-33 (D. Utah 2014) (quoting *O'Melveny & Myers v. F.D.I.C.,* 512 U.S. 79, 85 (1994)). PhRMA's field preemption claim fails because SB69 regulates drug delivery, and Congress decided not to legislate the issue of pharmacy distribution.

PhRMA argues that Congress occupies the "field" of the 340B Program.[24] This argument misses the mark as to what's required for PhRMA to meet its burden to show field preemption. Federal circuit courts hold that "[w]hen analyzing field preemption, the relevant field should be

---

[24] Compl., ECF No. 2, ¶¶ 121, 127.

defined narrowly." *United States v. Texas*, 97 F.4th 268, 278 (5th Cir. 2024) (cleaned up). *See also Farina v. Nokia Inc.*, 625 F.3d 97, 121 n.25 (3d Cir. 2010) ("the scope of a field deemed preempted by federal law may be narrowly defined" and "cases have used narrow conceptions of the relevant field."); *Nat'l Fed'n of the Blind v. United Airlines Inc.*, 813 F.3d 718, 734 (9th Cir. 2016) (emphasizing "the importance of delineating the pertinent area of regulation with specificity before proceeding with the field preemption inquiry"). So, while PhRMA argues that Congress exclusively occupies the whole field of anything related to Section 340B, PhRMA paints with too broad of a brush. The relevant field here must be defined narrowly.

With that in mind, the proper analysis is that Section 340B regulates the field of drug discount *pricing*. Section 340B "imposes ceilings on prices drug manufacturers may charge for medications sold to specified health-care facilities." *Astra USA, Inc. v. Santa Clara Cnty., Cal.*, 563 U.S. 110, 113 (2011). On the other hand, Section 340B is "silent about delivery." *Sanofi Aventis U.S. LLC v. United States Dep't of Health & Hum. Servs.*, 58 F.4th 696, 703 (3d Cir. 2023) (emphasis omitted); *see also Novartis Pharms. Corp. v. Johnson*, 102 F.4th 452, 460 (D.C. Cir. 2024) (section 340B is "silent about delivery conditions"). The federal statute is also silent regarding contract pharmacies. *See Sanofi Aventis*, 58 F.4th at 703 ("[n]owhere does Section 340B mention contract pharmacies."). These observations establish that contract pharmacies and delivery are "[m]atters left unaddressed" by Section 340B and thus "presumably subject to the disposition of state law." *Utah Coal. of La Raza*, 26 F. Supp. 3d at 1132-33 (cleaned up). Congress's legislation of the 340B Program to address discount pricing does not preempt states' authority to enact legislation ensuring that Covered Entities can use contract pharmacies for drug distribution. PhRMA's field preemption claim thus fails because SB69 regulates the delivery and distribution of drugs, not drug prices.

12

PhRMA effectively concedes that Congress left space for supplementation regarding distribution. Relying on *Novartis* and *Sanofi Aventis*, PhRMA asserts that manufacturers have the ability to make policies regarding contract pharmacies and "deliver[ing] 340B-priced drugs."[25] What PhRMA fails to mention is that such "ability of sellers" stems from Section 340B's "silence." *Novartis*, 102 F.4th at 460. So, PhRMA's argument cuts both ways. The statutory silence that gives manufacturers discretion to make policy decisions regarding distribution also gives states discretion to make their own policy decisions, through legislation, regarding delivery. The Utah Legislature made such a decision. Congress's regulatory framework leaves space for states to impose their own regulations on delivery. SB69 is thus not field preempted.

While PhRMA alleges Congress created a "comprehensive" and "pervasive" regulation scheme,[26] pervasive (or comprehensive) federal regulation by itself is insufficient to establish preemption. Federal regulation "of a field" must be "so pervasive that it leaves no space for state supplementation." *Bradshaw*, 123 F.4th at 1173. "[M]erely because the federal provisions were sufficiently comprehensive to meet the need identified by Congress did not mean that States and localities were barred from identifying additional needs or imposing further requirements in the field." *Hillsborough Cnty.*, 471 U.S. at 717. Though PhRMA alleges that Section 340B is a "comprehensive and detailed regulatory scheme," drug delivery and pharmacy distribution are nonetheless matters "left unaddressed" in that scheme. *Utah Coal. of La Raza*, 26 F. Supp. 3d at 1132-33 (cleaned up). A state law like SB69, which prevents pharmaceutical companies from restricting contract pharmacy arrangements made by Section 340B Covered Entities, is not field preempted.

---

[25] Compl., ECF No. 2, ¶¶ 9-10.
[26] Compl., ECF No. 2, ¶¶ 124-25.

Courts agree and have found PhRMA's field preemption claims meritless. In *McClain*, PhRMA claimed that Section 340B preempted an Arkansas statute, which is similar to SB69, that prohibits drug manufacturers from limiting Covered Entities' ability to contract with outside pharmacies. 95 F.4th 1136. The district court dismissed PhRMA's preemption claims after summary judgment, and the Eighth Circuit affirmed. *Id.* at 1139.

The Court of Appeals found that "the 340B Program is not so pervasive that Congress left no room for the States to supplement it." *Id.* at 1143 (cleaned up). The court noted that "the text of 340B is silent about delivery of drugs to patients," even though "[p]harmacies have always been an essential part of the 340B Program." *Id.* (cleaned up). The Eighth Circuit found that "Congress was aware of the role of pharmacies and state pharmacy law in implementing 340B." *Id.* at 1144. Yet Congress chose not to enact legislation within Section 340B on those issues. "Congress's decision not to legislate the issue of pharmacy distribution indicates that Section 340B is not intended to preempt the field." *Id.* at 1143. *See also Murrill*, 2024 WL 4361597, at *6 (dismissing PhRMA's field preemption claim challenging a similar state law because "the field does not extend to the relationship between contract pharmacies and covered entities" and the state law "does not, therefore, intrude on any exclusive federal regulatory scheme.").

Relying on *Astra*, 563 U.S. 110, PhRMA alleges that HHS' enforcement powers of Section 340B demonstrate field preemption.[27] *Astra* does not stand for that proposition. In *Astra*, Covered Entities sued drug manufacturers for overcharges on 340B drugs. The sole issue before the Supreme Court was whether Covered Entities could sue manufacturers as third-party beneficiaries of Pricing Agreements to which the manufacturers entered. 563 U.S. at 113. And,

---

[27] Compl., ECF No. 2, ¶¶ 52, 124

the issue of federal preemption was not before the Court in *Astra*. The narrow holding in *Astra* was that Covered Entities could not bring such third-party beneficiary suits "alleg[ing] that the manufacturers charged more than the § 340B ceiling price." *Id.* at 118. Rather, the existing dispute resolution process spelled out in Section 340B is "the proper remedy for covered entities complaining of *overcharges* and other violations of the discounted *pricing requirements*." *Id.* at 122 (emphasis added) (cleaned up).

Accordingly, PhRMA's reliance on *Astra* is misplaced. SB69 does not create state enforcement of drug prices. SB enforces drug manufacturers' *delivery* of drugs, bought by Covered Entities, to the Covered Entities' designated contract pharmacies. The *Astra* Court's rejection of a third-party beneficiary action for Covered Entities to enforce pricing obligations is irrelevant to whether Section 340B preempts a state law regulating the delivery of drugs.

For that reason, numerous courts have dismissed PhRMA's claim regarding Section 340B enforcement and enforcement of state laws like SB69. In *McClain*, PhRMA argued that the state law created an enforcement scheme that contravenes HHS's exclusive 340B jurisdiction. 95 F.4th at 1144. The Eighth Circuit concluded that the state law and Section 340B have "jurisdiction over different disputes." *Id.* The Arkansas law "ensures that covered entities can utilize contract pharmacies for their distribution needs and authorizes the [state] to exact penalties . . . if manufacturers deny 340B drugs to covered entities' contract pharmacies." *Id.* "The 340B Program, on the other hand, addresses discount pricing." *Id.* The Eighth Circuit thus held that the state law was not field preempted. *Id. See also Murrill*, 2024 WL 4361597, at *7-8 (rejecting PhRMA's reliance on *Astra* and finding state law did not encroach on federal enforcement scheme). The same reasoning applies here. PhRMA fails to state a claim that SB69 is field preempted.

15

1.3.    PhRMA fails to show conflict preemption

Also in Claim I, PhRMA claims that SB69 is conflict-preempted. Under conflict preemption, PhRMA bears the burden to demonstrate either that: 1) compliance with both federal and state requirements is physically impossible; or 2) SB69 stands as an obstacle to the accomplishment and execution of the full purposes and objectives of federal law. *United States v. Supreme Ct. of New Mexico*, 839 F.3d 888, 918 (10th Cir. 2016). Conflict preemption requires that the state law materially impede or thwart the federal law or policy. *Ramsey Winch*, 555 F.3d at 1204.

1.3.1.    *SB69 does not expand the transactions triggering 340B pricing*

PhRMA claims that SB69 rewrites the terms of an "offer" under the 340B Program.[28] This claim has no merit because PhRMA misreads what SB69 does. Under SB69, a manufacturer cannot "restrict or prohibit . . . the acquisition, dispensing, or delivery of a 340B drug to any location authorized by a 340B entity to receive the drug, unless prohibited by federal law." Utah Code § 31A-46-311(2)(a)(iii). A "340B drug" means a drug purchased through the 340B drug discount program by a 340B entity. *Id.* § 31A-46-102(1). SB69 does not conflict with federal law. SB69 applies to the delivery of drugs that are purchased through the 340B Program, and SB69 does not change any federal statutory requirements as to what drugs are purchased through the 340B program.

Moreover, SB69 explicitly does not conflict with federal law because the specific provision above does not apply if "prohibited by federal law." *Id.* § 31A-46-311(2)(a)(iii). And, if the Court has any doubts, the Court should apply the rule of statutory construction that where

---

[28] Compl., ECF No. 2, ¶ 130.

16

there are two alternative, reasonable interpretations of a statute, one of which would raise constitutional questions, the Court should construe the statute to avoid such issues. *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Const. Trades Council*, 485 U.S. 568, 575 (1988). SB69 does not expand the scope of what drugs are purchased through the 340B Program. PhRMA therefore fails to state a plausible preemption claim.

### 1.3.2.   *PhRMA's members can obtain claims data consistent with federal law*

PhRMA argues that SB69 prohibits Novartis from collecting claims data it needs to implement Section 340B requirements.[29] Again, PhRMA is incorrect. SB69 prohibits a drug manufacturer from

> [R]equir[ing] a 340B entity to submit any claim data, utilization data, or information about a 340B entity's contracts with a third-party as a condition for allowing the acquisition of a 340B drug by, or delivery of a 340B drug to, a 340B entity, unless the data or information sharing is required by federal law.

Utah Code § 31A-46-311(2)(b)(ii).

SB69 is not an outright prohibition on data collection. SB69 only prohibits manufacturers from conditioning receipt of a 340B drug on the provision of data. That provision does not conflict with federal law. Moreover, SB69 does not prohibit manufacturers from requiring Covered Entities to submit "data or information" that "is required by federal law." *Id.* If federal law requires data to be provided, a manufacturer can demand that data from a Covered Entity. For instance, federal law requires Covered Entities to share information as part of an audit: "A covered entity shall permit the Secretary and the manufacturer of a covered outpatient drug . . . to audit at the Secretary's or the manufacturer's expense the records of the entity that directly

---

[29] Compl., ECF No. 2, ¶¶ 132-33.

pertain to the entity's compliance with" Section 340B's requirements. 42 U.S.C. § 256b(a)(5)(C). SB69 allows drug manufacturers to get claims data when tied to this type of audit. Therefore, SB69 does not impede or thwart a manufacturer from obtaining the data they are entitled to obtain under federal law. PhRMA cannot show that SB69 conflicts with federal law.

Moreover, SB69 is not an obstacle to Section 340B because PhRMA can access Section 340B's dispute resolution process without requiring Covered Entities to continuously provide all claims data.[30] To initiate an audit, PhRMA just needs to show "reasonable cause," which is a low standard. HHS defines "reasonable cause" as to mean a reasonable person could believe that a covered entity may have violated a requirement of Section 340B. 61 Fed. Reg, 65,406, 65,409 (Dec. 12, 1996). And "reasonable cause" can be established without conditioning delivery of drugs on the provision of data. HRSA stated that "[s]ignificant changes in quantities of specific drugs ordered by a covered entity and complaints from patients/other manufacturers about activities of a covered entity may be a basis for establishing reasonable cause." *Id.* SB69 does not stand as an obstacle to Section 340B.

### 1.3.3. *SB69's enforcement of interference with contract pharmacy arrangements does not conflict with HHS' enforcement of pricing requirements*

PhRMA's claim regarding conflicting enforcement procedures fails because SB69 does not create its own oversight and enforcement scheme for Section 340B. PhRMA claims that SB69 conflicts the federal enforcement process of Section 340B.[31] But federal enforcement of Section 340B and state enforcement of SB69 are two different matters.

---

[30] Compl., ECF No. 2, ¶¶ 24, 133.
[31] Compl., ECF No. 2, ¶ 134.

HHS enforcement only covers matters addressed in the Section 340B statute, such as diversion, duplicate discounts, or overcharging. *See* 42 U.S.C. § 256b(d)(3). SB69 does not conflict with HHS enforcement because SB69 "does not address . . . the pricing, diversion, or 'double dipping' restrictions addressed in the HHS' enforcement scheme." *Murrill*, 2024 WL 4361597, at *8. SB69 prohibits "pharmaceutical manufacturers from interfering with a covered entity's contract pharmacy arrangements." *McClain*, 95 F.4th at 1145. This "falls outside the purview of 340B." *Id.* Utah penalties for violation of SB69 thus do not conflict with penalties under federal law for violations of Section 340B. *See Murrill*, 2024 WL 4361597, at *8 (dismissing conflict preemption claim and concluding that the state law does not encroach on HHS's enforcement scheme).

Though PhRMA may point to *PhRMA v. Morrisey*, 760 F. Supp. 3d 439 (S.D.W. Va. 2024), the court's reasoning in *Morrisey* is unpersuasive here. In *Morrisey*, the district court believed that the "preemption analysis is guided by" the Supreme Court decision in *Astra*, which the district court assumed was "binding" precedent on preemption. *Id.* at 456. But *Astra* was not a Supremacy Clause preemption case.

Furthermore, the reasoning in *Astra* has no bearing on whether state laws regarding delivery are preempted by Section 340B. "*Astra* held that covered entities lack a cause of action as third-party beneficiaries to [Pricing Agreements] to sue manufacturers for overcharging them for 340B drugs." *PhRMA v. Fitch*, No. 1:24-CV-160-HSO-BWR, 2024 WL 3277365, at *11 (S.D. Miss. July 1, 2024) (citing *Astra*, 563 U.S. at 117-19). *Astra* recognized only that Congress contemplated a "framework . . . for covered entities complaining of '*overcharges* and other violations of the discounted *pricing requirements*.'" 563 U.S. at 122 (quoting 42 U.S.C. § 256b(d)(1)(A)) (emphasis added).

An overcharging claim is different from a claim that a manufacturer interfered with a Covered Entity's contract with a pharmacy. *Fitch*, 2024 WL 3277365, at *11. Enforcement of SB69 will not concern issues of "overcharges" or "pricing requirements." Instead, enforcement of SB69 concerns whether manufacturers deliver the drugs to where Covered Entities wanted them delivered. The holding in *Astra* regarding HHS enforcement of overcharges thus has no bearing on whether Section 340B preempts state laws that impose regulatory conditions on the delivery of 340B drugs. PhRMA fails to state a claim that SB69 is conflict preempted, and Claim I should be dismissed.

**2.    SB69 does not violate the Commerce Clause**

The Supreme Court recently clarified how lower courts should analyze dormant Commerce Clause claims in *Nat'l Pork Producers Council v. Ross,* 598 U.S. 356 (2023). There, the Supreme Court stated that "antidiscrimination . . . lies at the very core of our dormant Commerce Clause jurisprudence." *Nat'l Pork*, 598 U.S. at 369.

The dormant Commerce Clause "prohibits the enforcement of state laws driven by economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *Id.* (internal citation omitted). In *Nat'l Pork*, California enacted a law to prohibit the in-state sale of pork that came from pigs confined in a cruel manner. The law applied equally to in-state pork producers as well as those out-of-state. The petitioners challenged the law under the dormant Commerce Clause and the Supreme Court rejected those arguments. For the same reasons that California may regulate the welfare of pigs destined for slaughter and sold within its state, Utah may regulate how prescription drugs are distributed in Utah.

PhRMA's claim here suffers from the same deficiencies as plaintiffs in *Nat'l Pork.* A review of SB69's plain text demonstrates that the law does not advantage Utah commercial entities at the expense of out-of-state competitors. PhRMA and other out-of-state drug manufacturers are not "competitors" to Utah's healthcare providers. While PhRMA competes with other drug manufacturers, it does not compete with Covered Entities. Moreover, SB69 does not discriminate against out-of-state competitors. It imposes the same liability on in-state drug manufacturers that it imposes on out-of-state entities. This is fatal to PhRMA's dormant Commerce Clause claim.

PhRMA asserts that SB69 "regulates conduct occurring wholly beyond the borders of Utah."[32] Yet this assertion is undermined by PhRMA's own statement, earlier in its Complaint, that "[s]ubstantial amounts of PHRMA's members' drugs are sold . . . to Covered Entities in [Utah]." In other words, PhRMA does business in Utah, and PhRMA's contrary claim that its activities are "wholly beyond the borders of Utah" may be disregarded.

Alternatively, if PhRMA is attempting to assert claims of third parties who are not part of this lawsuit, whose activities may be "wholly beyond" the borders of Utah, then the third-party standing doctrine bars the claim. Courts "must hesitate before resolving a controversy . . . on the basis of the rights of third persons not parties to the litigation[.]" *The Wilderness Soc. v. Kane County, Utah*, 632 F.3d 1162, 1171 (10th Cir. 2011) (internal citation omitted). This is for two reasons. "First, the courts should not adjudicate such rights . . . it may be that in fact the holders of those right … do not wish to assert them." *Id.* Second, "third parties themselves usually will be the best proponent of their own rights." *Id.* at 1172. PhRMA's dormant commerce clause claim lacks merit.

---

[32] Compl. ECF No. 2, ¶ 143.

### 3.    SB69 is not unconstitutionally vague

In Claim III, PhRMA claims that SB69 is unconstitutionally vague because it does not define the term "interfere."[33] To state a claim that a statute is unconstitutionally vague, PhRMA must either demonstrate the statute "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or it "encourages arbitrary and discriminatory enforcement." *Wyo. Gun Owners v. Gray*, 83 F.4th 1224, 1233 (10th Cir. 2023) (cleaned up). In analyzing vagueness challenges, courts recognize that the "Constitution does not impose impossible standards of specificity." *Id.* (cleaned up). "All that is required is that the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *United States v. Hunter*, 663 F.3d 1136, 1142 (10th Cir. 2011) (cleaned up).

When a word has a well-settled, commonly understood meaning, its use does not render a statute unconstitutionally vague. *United States v. Gaudreau*, 860 F.2d 357, 362 (10th Cir. 1988). Accordingly, courts repeatedly dismiss vagueness claims when dictionaries provide a sufficient definition of the term's ordinary usage. *See, e.g., United States v. Graham*, 305 F.3d 1094, 1105 (10th Cir. 2002) (giving undefined term "engaged in the business" its plain and ordinary meaning by consulting dictionary definitions and thus finding the term was not unconstitutionally vague).

Here, the word "interfere" is not unconstitutionally vague. Black's Law Dictionary defines "interference" as "[t]he act or process of obstructing normal operations or intervening or meddling in the affairs of others" and as an "obstruction or hindrance." *Interference*, BLACK'S LAW DICTIONARY (12th ed. 2024). Black's further confirms that this is the understood meaning

---

[33] Compl., ECF No. 2, ¶ 152.

"in ordinary language." *Id.* And the definition in Black's "is consistent with" another dictionary definition of the term: "to be or create a hindrance or obstacle." *Murrill*, 2024 WL 4361597, at *10 (quoting "Interfere," American Heritage Dictionary (2022)). Therefore, "persons of common intelligence" are not left to "guess" at the meaning of interfere. *Kleinsmith v. Shurtleff*, 571 F.3d 1033, 1038 (10th Cir. 2009). *See also Cameron v. Johnson*, 390 U.S. 611, 615-16 (1968) (concluding "unreasonably interfere" is not vague). PhRMA's void for vagueness claim has no merit.

Two courts have already rejected PhRMA's argument that "interfere" is vague. In *Murrill*, PhRMA claimed that "interfere" as used in a Louisiana law similar to SB69 was vague. 2024 WL 4361597, at *10. Although the Louisiana law did not define "interfere," the district court found that a dictionary definition and the statutory context of "interfere" gave the term a definite meaning sufficient to overcome a vagueness challenge. *Id. See also Fitch*, 2024 WL 3277365, at *14-15 (concluding that "persons of common intelligence would not necessarily guess at" the meaning of interfere, as confirmed by its plain meaning and the law's context and history). The same holds true here: common sense is all that is needed to understand "interfere."

The cases PhRMA cites are not to the contrary. PhRMA cites *Carolina Youth Action Project v. Wilson*, 60 F.4th 770, 786 (4th Cir. 2023). But in that case, the law at issue made it a crime to "interfere with or to disturb in any way or in any place the students or teachers of any school or college in this State," "to loiter about such school or college premises," or "to act in an obnoxious manner thereon." *Id.* The court's analysis focused on the vagueness of the terms "disturb," "loiter," and "obnoxious," stating that there are vagueness issues if the government "prosecuted all unnecessary disturbances, loitering, or obnoxiousness in schools." *Id.* The court

23

never found that the term "interfere" is vague, nor did the court engage in any specific analysis regarding "interfere." PhRMA's "reliance on *Carolina Youth Action Project* . . . to argue that [SB69's] use of the term 'interfere' is unconstitutionally vague is misplaced." *Murrill*, 2024 WL 4361597, at *10-11.

The same with *United States v. Elliot*, No. 2:17-cr-33, 2018 WL 11478272, at *1, *3 (N.D. Ga. Aug. 8, 2018), another case PhRMA cites. The regulation at issue in *Elliot* prohibited a person who "interferes with, impedes or disrupts the use of the project or impairs the safety of any person." *Id.* at *3. The district court did not analyze whether "interferes" is vague. Rather, the sole issue the court considered was "whether his conduct impeded or disrupted the use of the project." *Id.* at *2. And the court found that it was vague whether the specific conduct of nudity "disrupts the peace." *Id.*

Moreover, PhRMA's claim regarding criminal enforcement of SB69 is without merit because a criminal violation requires the mens rea of intentionally. A scienter requirement reduces any vagueness problems. *United States v. Wenger*, 292 F. Supp. 2d 1296, 1308 (D. Utah 2003), aff'd, 427 F.3d 840 (10th Cir. 2005). "[W]here the punishment imposed is only for an act knowingly done with the purpose of doing that which the statute prohibits, the accused cannot be said to suffer from lack of warning or knowledge that the act which he does is a violation of law." *United States v. Welch*, 327 F.3d 1081, 1096 (10th Cir. 2003) abrogated on other grounds as recognized by *United States v. McBride*, 94 F.4th 1036, 1043 n.9 (10th Cir. 2024).

Under Utah Code, someone engages in conduct "[i]ntentionally, or with intent or willfully with respect to the nature of his conduct or to a result of his conduct, when it is his conscious objective or desire to engage in the conduct or cause the result." Utah Code § 76-2-

24

103(1). This is a higher mens rea than "knowingly" in the Utah Code. *Id.* § 76-2-103(1), (2). PhRMA thus cannot plausibly allege it lacks fair notice of the law, and PhRMA fails a state a plausible vagueness claim.

Finally, PhRMA contends that its First Amendment rights are implicated because manufacturers are entitled to publicize information about Covered Entities' Section 340B violations when filing complaints with HHS.[34] PhRMA alleges that SB69 prohibits them from doing so.[35] Even assuming this implicates protected speech under the First Amendment, the Court must construe SB69 not to conflict with federal law. Utah Code § 31A-46-311(4) ("Nothing in this section is to be construed to conflict with federal law."). Accordingly, SB69 does not "prohibit[] manufacturers from exercising their audit rights under § 256b(a)(5)(C) or otherwise reporting misconduct to HRSA or HHS." *Fitch*, 2024 WL 3277365, at *14. SB69 does not infringe on manufacturers' First Amendment rights, nor is it vague.  The Court should dismiss Claim III.

<strong>CONCLUSION</strong>

Even accepting PhRMA's factual allegations as true, PhRMA nevertheless fails to state claims for which relief may be granted. This Court should grant Defendants' Motion to Dismiss.

DATED: May 16, 2025.

OFFICE OF THE UTAH ATTORNEY GENERAL

*/s/ Jason Dupree*
JASON DUPREE
LANCE SORENSON
Assistant Utah Attorneys General
*Counsel for Defendants*

---

[34] Compl., ¶ 153.
[35] *Id.*