William B. Schultz*
Margaret M. Dotzel*
Alyssa Howard Card*
Courtney Christensen*
ZUCKERMAN SPAEDER LLP
2100 L Street NW, Suite 400
Washington, DC 20037
Tel: (202) 778-1800
Fax: (202) 822-8106
wschultz@zuckerman.com
mdotzel@zuckerman.com
acard@zuckerman.com
cchristensen@zuckerman.com
*Admitted *Pro Hac Vice*
*Attorneys for Amici Curiae*

Austin B. Egan (13203)
STAVROS LAW P.C.
8915 South 700 East, Suite 202
Sandy, Utah 84070
Tel: 801.758.7604
austin@stavroslaw.com
*Local Counsel for Amici Curiae*

## IN THE UNITED STATES DISTRICT COURT IN AND FOR THE DISTRICT OF UTAH, SOUTHERN DIVISION

| | |
|---|---|
| PHARMACEUTICAL RESEARCH AND MANUFACTURERS OF AMERICA *et al.*,<br><br>    Plaintiffs,<br><br>vs.<br><br>DEREK BROWN, *et al.*,<br><br>    Defendants. | **BRIEF OF AMICI CURIAE AMERICAN HOSPITAL ASSOCIATION, 340B HEALTH, UTAH HOSPITAL ASSOCIATION, AND AMERICAN SOCIETY OF HEALTH SYSTEM PHARMACISTS IN CONNECTION WITH DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION & MOTION TO DISMISS**<br><br>Case No. 2:25-cv-00308-RJS-DAO<br><br>Judge Robert J. Shelby<br>Magistrate Judge Daphne A. Oberg |

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................................................II

INTEREST OF *AMICI CURIAE* ...................................................................................... 1

INTRODUCTION .............................................................................................................. 2

FACTUAL BACKGROUND ON THE IMPORTANCE OF CONTRACT PHARMACY ARRANGEMENTS IN UTAH........................................................................................... 7

ARGUMENT ...................................................................................................................... 8

I.    PHRMA'S SUPREMACY CLAUSE CLAIM FAILS.............................................. 8

   A.    PhRMA Lacks a Cause of Action to Assert Federal Preemption. ..................... 8

   B.    S.B. 69 Is Not Preempted................................................................................... 8

      1.    Congress Did Not Create or Occupy a Field When It Established the 340B Program .......................................................................................11

      2.    S.B. 69 Does Not Conflict with the 340B Statute.................................. 12

        (a)    S.B. 69's Restrictions on Claims Data Are Not Preempted ........................... 14

        (b)    S.B. 69 Regulates Delivery, Not Price......................................................... 17

        (c)    S.B. 69 Has Nothing to Do with Federal Efforts to Prevent Diversion. ......... 19

II.   S.B. 69 IS NOT VOID FOR VAGUENESS. ........................................................ 20

III.  S.B. 69 IS NOT AN UNCONSTITUTIONAL EXTRATERRITORIAL REGULATION ... 22

CONCLUSION................................................................................................................. 25

i

# TABLE OF AUTHORITIES

## CASES

*Abramski v. United States*,
573 U.S. 169 (2014) ................................................................................................ 21

*Am. Hosp. Ass'n v. Azar*,
967 F.3d 818 (D.C. Cir. 2020) ............................................................................... 13

*Am. Hosp. Ass'n v. Becerra*,
596 U.S. 724 (2022) ............................................................................................ 7, 13

*Am. Hosp. Ass'n v. HHS*,
No. 4:20-cv-08806, 2021 WL 616323 (N.D. Cal. Feb. 17, 2021) .......................... 19

*Arizona v. United States*,
567 U.S. 387 (2012) ................................................................................................ 10

*Armstrong v. Exceptional Child Ctr., Inc.*,
575 U.S. 320 (2015) ......................................................................................... 4, 8, 9

*Astra USA, Inc. v. Santa Clara Cty., Cal.*,
563 U.S. 110 (2011) ......................................................................................9, 11, 19

*AstraZeneca Pharms. LP v. Fitch*,
2024 WL 5345507 (S.D. Miss. Dec. 23, 2024) .............................................. 4, 9, 19

*Bondi v. VanDerStock*,
145 S. Ct. 857 (2025) .............................................................................................. 16

*Camps Newfound/Owatonna, Inc. v. Town of Harrison*,
520 U.S. 564 (1997) ................................................................................................ 12

*Chamber of Com. of U.S. v. Whiting*,
563 U.S. 582 (2011) ................................................................................................ 13

*Chinatown Neighborhood Ass'n v. Harris*,
794 F.3d 1136 (9th Cir. 2015) ................................................................................ 12

*Cipollone v. Liggett Grp., Inc.*,
505 U.S. 504 (1992) ................................................................................................ 10

*City of Columbus v. Ours Garage & Wrecker Serv., Inc.*,
536 U.S. 424 (2002) ................................................................................................ 10

*Conway v. United States*,
997 F.3d 1198 (Fed. Cir. 2021) .............................................................................. 12

*Crosby v. Nat'l Foreign Trade Council,*
    530 U.S. 363 (2000) ................................................................................ 10

*CTS Corp. v. Dynamics Corp. of Am.,*
    481 U.S. 69 (1987) .................................................................................. 13

*Dep't of Revenue of Ky. v. Davis,*
    553 U.S. 328 (2008) ................................................................................ 23

*Direct Mktg. Ass'n v. Brohl,*
    814 F.3d 1129 (10th Cir. 2016) .............................................................. 23

*English v. Gen. Elec. Co.,*
    496 U.S. 72 (1990) .................................................................................... 4

*Ex parte Young,*
    209 U.S. 123 (1908) ............................................................................ 8, 9

*Exxon Corp. v. Governor of Md.,*
    437 U.S. 117 (1978) ................................................................................ 23

*Gonzaga University v. Doe,*
    536 U.S. 273 (2002) .................................................................................. 9

*Hill v. Colorado,*
    530 U.S. 703 (2000) .......................................................................... 20, 22

*Hillsborough Cnty. v. Automated Med. Labs. Inc.,*
    471 U.S. 707 (1985) .................................................................................. 4

*Hines v. Davidowitz,*
    312 U.S. 52 (1941) .................................................................................. 13

*In re MDL 2700 Genentech Herceptin (Trastuzumab) Mktg. & Sales Prac. Litig.,*
    960 F.3d 1210 (10th Cir. 2020) .............................................................. 11

*Integrity Mgmt. Int'l, Inc. v. Tombs & Sons, Inc.,*
    836 F.2d 485 (10th Cir. 1987) ................................................................ 12

*Iowa, Chicago & Eastern R.R. Corp. v. Washington County, Iowa,*
    384 F.3d 557 (8th Cir. 2004) .................................................................. 12

*Johnson & Johnson Vision Care, Inc. v. Reyes,*
    665 F. App'x 736 (10th Cir. 2016) ................................................... 23, 24

*Levorsen v. Octapharma Plasma, Inc.,*
    828 F.3d 1227 (10th Cir. 2016) .............................................................. 21

*Malone v. White Motor Corp.*,
    435 U.S. 497 (1978) .................................................................................................. 10

*Medtronic, Inc. v. Lohr*,
    518 U.S. 470 (1996) ............................................................................................... 6, 10

*Murphy v. Nat'l Collegiate Athletic Ass'n*,
    584 U.S. 453 (2018) .................................................................................................. 10

*N.Y. Dep't of Soc. Servs. v. Dublino*,
    413 U.S. 405 (1973) ..........................................................................................4, 10, 11

*National Pork Producers Council v. Ross*,
    598 U.S. 356 (2023) ......................................................................................5, 6, 22, 23

*Nevares v. M.L.S.*,
    345 P.3d 719 (Utah 2015) ......................................................................................... 24

*New Gaming Sys., Inc. v. Nat'l Indian Gaming Comm'n*,
    896 F. Supp. 2d 1093 (W.D. Okla. 2012) ................................................................. 22

*Novartis Pharms. Corp. v. Bailey*,
    2025 WL 489881 (W.D. Mo. Feb. 13, 2025) ......................................................... 5, 10

*Novartis Pharms. Corp. v. Fitch*,
    738 F. Supp. 3d 737 (S.D. Miss. July 1, 2024) ......................................................... 4, 9

*Novartis Pharms. Corp. v. Johnson*,
    102 F.4th 452 (D.C. Cir. 2024) ................................................................ 2, 14, 15, 17

*Paul v. Monts*,
    906 F.2d 1468 (10th Cir. 1990) ............................................................................ 6, 12

*PhRMA v. Fitch*,
    2024 WL 3277365 (S.D. Miss. July 1, 2024) ................................................ 20, 21, 22, 23, 24

*PhRMA v. McClain*,
    95 F.4th 1136 (8th Cir.) ................................................ 4, 6, 9, 13, 14, 15, 17, 18, 19

*PhRMA v. Morrissey*,
    760 F. Supp. 3d 439, 2024 WL 5147643 (S.D. W. Va. Dec. 17, 2024)..................................... 5

*PhRMA v. Murrill*,
    Nos. 6:23-cv-00997, 6:23-cv-01042, 6:23-cv-01307, 2024 WL 4361597
    (W.D. La. Sept. 30, 2024) .............................................................. 12, 13, 18, 19, 20

*PhRMA v. Walsh*,
    538 U.S. 644 (2003) .................................................................................................. 10

*Planned Parenthood of Indiana, Inc. v. Commissioner of Indiana State Dept. Health,*
    699 F.3d 962 (7th Cir. 2011) .................................................................... 12

*Planned Parenthood of Kansas v. Andersen,*
    882 F.3d 1205 (10th Cir. 2018) .................................................................... 3

*Ramsey Winch, Inc. v. Henry,*
    555 F.3d 1199 (10th Cir. 2009) .................................................................... 4

*Rosser v. Rosser,*
    2021 UT 71 (2021) .................................................................................... 21

*Safe Streets All. v. Hickenlooper,*
    859 F.3d 865 (10th Cir. 2017) .................................................................. 8, 9

*Sanofi Aventis U.S. LLC v. U.S. Dep't of Health & Hum. Servs.,*
    58 F.4th 696 (3d Cir. 2023) .................................................................... 3, 17

*Schafer v. American Cyanamid Co.,*
    20 F.3d 1 (1st Cir. 1994) ........................................................................... 12

*United States v. Lesh,*
    107 F.4th 1239 (10th Cir. 2024) ................................................................ 20

*Utah v. Eli Lilly,*
    509 F. Supp. 2d 1016 .................................................................................. 6

## STATUTES

15 U.S.C. § 77kk(c) ....................................................................................... 21

18 U.S.C. § 245(b) ........................................................................................ 21

29 U.S.C. § 158(a) ........................................................................................ 21

29 U.S.C. § 2615 ........................................................................................... 21

42 U.S.C. § 256b ............................................................................... 9, 15, 19

42 U.S.C. § 3617 ........................................................................................... 21

47 U.S.C. § 333 ............................................................................................. 21

Utah Code § 31A-46-311 ......................................................................... 3, 17

## OTHER AUTHORITIES

340B ADR Decision Summaries,
    HRSA (last visited May 19, 2025) ........................................................................ 13

340B Health,
    *Drugmakers Pulling $8 Billion Out of Safety-Net Hospitals: More Expected as
    Growing Number Impose or Tighten 340B Restrictions* ............................................ 7

340B Health,
    *Restrictions on 340B Contract Pharmacy Increase Drug Company Profits but
    Lead to Lost Savings, Patient Harm, and Substantial Burden for Safety-Net Hospitals* ........ 7, 8

Adam J. Fein,
    Drug Channels Institute, *Insurers + PBMs + Specialty Pharmacies + Providers:
    Will Vertical Consolidation Disrupt Drug Channels in 2020?* (Dec. 12, 2019) ........................ 8

Adam J. Fein,
    Drug Channels Institute, *The 2022 Economic Report on U.S. Pharmacies and
    Pharmacy Benefit Managers* (Mar. 2022) .................................................................. 8

Health Res. & Servs. Admin.,
    340B Drug Pricing Program Notice, Release No. 2011 – 1.1,
    Clarification of Non-Discrimination Policy (2012) .................................................... 16

Letter from Dep't of Health & Hum. Servs.,
    Health Resources & Servs. Admin. Administrator C. Johnson to AbbVie, Inc.
    Vice Pres., U.S. Market Access C. Compisi (Oct. 17, 2022) ........................................ 2

Specialty Drug Coverage and Reimbursement in Medicaid,
    HHS Office of Inspector General ......................................................................... 8

Utah Senate Bill 69 .............................. 3, 4, 5, 6, 7, 8, 9, 10, 13, 15, 17, 18, 19, 20, 21, 22, 23, 24

**REGULATIONS**

Final Notice Regarding Section 602 of the Veterans Health Care Act of
    1992 Entity Guidelines, 59 Fed. Reg. 25,110 (May 13, 1994) ........................................... 15, 16

Manufacturer Audit Guidelines and Dispute Resolution Process,
    61 Fed. Reg, 65,406 (Dec. 12, 1996) ..................................................................... 15, 16

## INTEREST OF *AMICI CURIAE*[1]

The *amici curiae* filing this brief are: American Hospital Association, 340B Health, Utah Hospital Association, and American Society of Health System Pharmacists (collectively referred to as "*Amici*"). *Amici* and their members are committed to improving the health of the communities they serve through the delivery of high-quality, efficient, and accessible health care. The discounts provided by the 340B program are essential to achieving this goal. *Amici* therefore have a strong interest in the success of Utah's legislative efforts to protect the 340B program.[2]

The **American Hospital Association** (AHA) represents nearly 5,000 hospitals, healthcare systems, and other healthcare organizations nationwide. AHA members are committed to helping ensure that healthcare is available to and affordable for all Americans. AHA promotes the interests of its members by participating as *amicus curiae* in cases with important and far-ranging consequences for their members, including cases related to the 340B program.

**340B Health** is a national, not-for-profit organization founded in 1993 to advocate for 340B hospitals—a vital part of the nation's healthcare safety net. 340B Health represents over 1,600 public and private nonprofit hospitals and health systems participating in the 340B program.

The **Utah Hospital Association** strives to be the state's most influential, trusted and respected leader in healthcare policy and advocacy and a valued resource for information and knowledge. The Utah Hospital Association represents 45 community hospitals, a Veterans Administration regional hospital, a state teaching hospital, two rehabilitation hospitals, three specialty hospitals, six substance abuse/psychiatric facilities and a state mental hospital.

---

[1]    The parties do not object to the filing of this brief.
[2]    Proposed *Amici* also certify that neither party's counsel authored the attached *amicus* brief in whole or part, and neither party nor its counsel nor any other person have contributed money to fund the preparation and/or submission of the brief.

1

The **American Society of Health-System Pharmacists** (ASHP) is the largest association of pharmacy professionals in the United States. ASHP advocates and supports the professional practice of pharmacists in hospitals, health systems, ambulatory care clinics, and other settings spanning the full spectrum of medication use. For over 80 years, ASHP has championed innovation in pharmacy practice; advanced education and professional development; and served as a steadfast advocate for members and patients.

## INTRODUCTION

Five years ago, nearly 40 drug companies, many of which are members of Plaintiff Pharmaceutical Research and Manufacturers of America (PhRMA) broke with decades of precedent and suddenly refused to ship drugs purchased by 340B hospitals to contract pharmacies. The federal government determined that this was unlawful and sought to require manufacturers to continue delivering these drugs to contract pharmacies on the same terms to which they delivered those drugs to 340B in-house hospital pharmacies.[3]

The drug companies fought that effort tooth and nail. In lawsuit after lawsuit, they argued that the federal government could not interfere with their contract pharmacy restrictions. At no point did the drug companies describe their contract pharmacy policies as price restrictions. Instead, they insisted that their policies were permissible because: (1) they were *delivery* restrictions,[4] and (2) the 340B statute had absolutely nothing to say about *delivery*. Those

---

[3]   *See, e.g.*, Letter from Dep't of Health & Hum. Servs., Health Resources & Servs. Admin. Administrator C. Johnson to AbbVie, Inc. Vice Pres., U.S. Market Access C. Compisi (Oct. 17, 2022),https://www.hrsa.gov/sites/default/files/hrsa/opa/programintegrity/hrsa-letter-abbvie-covered-entities.pdf.

[4]   *E.g.*, Novartis Opening Brief at 4, *Novartis Pharms. Corp. v. Johnson*, No. 21-5299, Doc. 1949831 (D.C. Cir. June 8, 2022) ("Section 340B . . . is *silent* as to whether manufacturers must deliver those drugs to contract pharmacies.") (emphasis added); AstraZeneca Opening Br. at 4, *AstraZeneca Pharms. L.P. v. U.S. Dep't of Health & Hum. Servs.*, No. 22-01676 (3d Cir. July 21,

arguments carried the day. *See Novartis Pharms. Corp. v. Johnson*, 102 F.4th 452, 460 (D.C. Cir. 2024)(Section 340B is "silent about delivery conditions"); *Sanofi Aventis U.S. LLC v. U.S. Dep't of Health & Hum. Servs.*, 58 F.4th 696, 703, 707 (3d Cir. 2023) (Section 340B's "text is silent about delivery" and "[l]egal duties do not spring from silence."); 340B ADR Decision Summaries, HRSA, https://tinyurl.com/5n7abbw2 (last visited May 19, 2025) ("There is no overcharge violation in Petition ID 240723-0024, consistent with the rulings of the U.S. District Court for the District of Delaware and U.S. Court of Appeals for the Third Circuit with respect to AstraZeneca's contract pharmacy policy.").

Now comes the whiplash. Banking the wins of those drug companies, PhRMA contends that Utah's law requiring shipment to contract pharmacies regulates the conditions that drug companies can place on price, not delivery. And as part of that *volte-face*, PhRMA now insists that States cannot fill the federal statutory gap that other manufacturers have spent years fighting for in sister circuits. PhRMA's heads-I-win-tails-you-lose argument is as shameless as it is meritless.

This history is important—and not just because it exposes the hypocrisy in PhRMA's legal position. It also reminds the Court *why* Utah chose to step into the federal statutory void. Put simply, Utah acted because the other drug companies and the other federal courts all but invited it to.

Faced with the drug industry's unprecedented assault on Utah's health care safety net and the acknowledged gap in federal law, the Utah legislature passed Utah Senate Bill 69 (S.B. 69) by an overwhelming 71-0 vote in the State House and 26-1 vote in the State Senate. S.B. 69 does only

---

2022) ("Section 340B is 'silent' on the role of contract pharmacies under the program. That silence means the statute does not impose contract pharmacy obligations on manufacturers.").

what drug manufacturers and the federal courts said the *federal* law did not do—regulate the delivery of 340B drugs. Utah Code § 31A-46-311.

The primary issue here is whether Utah, exercising its historic police power over health and safety, can fill the gap in the federal 340B statute and regulate the delivery of 340B drugs (purchased by 340B hospitals) to contract pharmacies. It can. Accordingly, PhRMA's preliminary injunction motion should be denied and its Complaint dismissed because it cannot demonstrate that it has a substantial likelihood of success on the merits—the "first and most important preliminary-injunction factor." *Planned Parenthood of Kansas v. Andersen*, 882 F.3d 1205, 1229 (10th Cir. 2018).

All of PhRMA's claims fail. *First*, PhRMA has no cause of action under the Supremacy Clause nor the 340B statute, so its preemption claims cannot get off the ground.

*Second*, even if PhRMA did have a cause of action under the Supremacy Clause, S.B. 69 is not field preempted. "Courts do not lightly attribute to Congress or to a federal agency the intent to preempt state or local laws." *Ramsey Winch, Inc. v. Henry*, 555 F.3d 1199, 1204 (10th Cir. 2009) (citation and internal quotation marks omitted). Given that foundational principle, PhRMA's preemption arguments do not remotely "approach the level necessary to overcome 'the assumption that the historic police powers of the States [are] not to be superseded by the Federal Act." *Id*. at 1208 (citation omitted). Congress did not create or occupy any field through its 340B legislation. PhRMA's entire field preemption argument is premised on the false notion that Section 340B "created a comprehensive federal program in 340B, centralized enforcement of that program exclusively within HHS," and made provisions of the 340B statute the "'proper remedy' for disputes regarding the 340B program." PhRMA Prelim. Injunct'n Brief 21. But comprehensiveness alone does not wrest traditional police power from the States. That has never

4

been the rule in our federal system. *E.g.*, *Hillsborough Cnty. v. Automated Med. Labs. Inc.*, 471 U.S. 707, 717 (1985); *English v. Gen. Elec. Co.*, 496 U.S. 72, 87 (1990); *N.Y. Dep't of Soc. Servs. v. Dublino*, 413 U.S. 405, 415 (1973). And even if it were, the 340B statute is silent as to delivery of 340B drugs and contract pharmacies. As numerous courts across the country have recognized, this gap in federal law is fatal to any field preemption claim. *E.g.*, *PhRMA v. McClain*, 95 F.4th 1136, 1143–45 (8th Cir. 2024), *cert. denied*, 145 S. Ct. 768 (2024); *Novartis Pharms. Corp. v. Fitch*, 738 F. Supp. 3d 737, 747 (S.D. Miss. 2024); *AstraZeneca Pharms. LP v. Fitch*, No. 1:24-cv-196-LG-BWR, 2024 WL 5345507, at *4–9 (S.D. Miss. Dec. 23, 2024); *Novartis Pharms. Corp. v. Bailey*, No. 2:24-cv-04131-MDH, 2025 WL 489881, at *2–4 (W.D. Mo. Feb. 13, 2025).[5]

*Third*, S.B. 69 is not conflict preempted. Contrary to PhRMA's assertions, Utah's law does not contravene the federal government's enforcement authority and does not regulate 340B price. The price of 340B drugs continues to be set by federal law. Utah's law only affects *where* the 340B drugs (purchased by 340B hospitals) are shipped and stored. It is, in essence, a non-discrimination provision. S.B. 69 allows *Utah* hospitals to choose where 340B drugs are to be shipped for its patients (a hospital pharmacy or a contract pharmacy), rather than letting drug companies discriminate in favor of in-house hospital pharmacies. What's more, State enforcement is limited to *only* this non-discrimination requirement. Utah does not enforce requirements under federal law; it enforces only the state law requirement under S.B. 69 that manufacturers deliver drugs (bought by Utah's 340B hospitals) to contract pharmacies *on the same terms* as they deliver to Utah's in-house hospital pharmacies.

---

[5]    The only court to conclude that the drug manufacturers were likely to succeed on the merits of their preemption claim based its ruling on a fundamental misunderstanding of the 340B statute and program. *See PhRMA v. Morrissey*, 760 F. Supp. 3d 439, 2024 WL 5147643 (S.D. W. Va. 2024). *Amici* address the flaws in that opinion in greater detail in their *amicus* brief in *AbbVie v. Brown*, 25-cv-271 (D. Ut), also pending before this Court.

*Fourth,* PhRMA's ancillary claim under the Due Process Clause likewise falls flat. The commonly-used term "interfere" is easily understood. PhRMA's arguments to the contrary do not meet the high bar required to prove that statutory language is unconstitutionally vague.

*Fifth,* S.B. 69 is not an unconstitutional extraterritorial statute. In its argument to the contrary, PhRMA advances a sweeping reading of the dormant Commerce Clause that was recently rejected by the Supreme Court in *National Pork Producers Council v. Ross*, 598 U.S. 356, 375 (2023), and which would essentially bar any state law that has extraterritorial effects. Like the petitioners in that case, PhRMA advocates an "'almost *per se*' rule against laws that have the 'practical effect' of 'controlling' extraterritorial commerce [which] would cast a shadow over laws long understood to represent valid exercises of the States' constitutionally reserved powers." *Id.*

All in all, PhRMA's attack on S.B. 69 is really an attack on federalism itself. At bottom, PhRMA tries to transform an acknowledged federal statutory silence into a reason to displace traditional state authority. That is not the law. *See Paul v. Monts*, 906 F.2d 1468, 1475 n.8 (10th Cir. 1990) ("Congressional silence will not be presumed to mandate preemption. On the contrary, it will not be presumed that a federal statute was intended to supersede the exercise of the power of the state unless there is a clear manifestation of intent to do so." (citation and internal quotation marks omitted)). "Pharmacy has traditionally been regulated on the state level." *McClain*, 95 F.4th at 1114. And "[i]n fields traditionally occupied by the states, such as health and safety regulation, there is a strong presumption against federal preemption." *Utah v. Eli Lilly & Co.*, 509 F. Supp. 2d 1016, 1025 (D. Utah 2007) (citation and internal quotation marks omitted). Invalidating Utah's lawful exercise of State authority would turn upside down the very "federalism concerns" that underlie preemption questions and upend "the historic primacy of state regulation of matters of health and safety." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996).

## FACTUAL BACKGROUND ON THE IMPORTANCE OF CONTRACT PHARMACY ARRANGEMENTS IN UTAH

PhRMA spends page after page maligning the 340B Program and the covered entities that rely on it. Needless to say, it is in its members' financial interest to do so. For PhRMA's members, every 340B drug they refuse to deliver to a Utah contract pharmacy augments their profits.

But this is not how the Supreme Court has viewed the program. As Justice Kavanaugh wrote for a unanimous Supreme Court just a few years ago: "340B hospitals perform valuable services for low-income and rural communities but have to rely on limited federal funding for support." *Am. Hosp. Ass'n v. Becerra*, 596 U.S. 724, 738 (2022). And more significant here, the Utah legislature, with an unbiased interest in protecting its citizens, hospitals, and pharmacies, shares the Supreme Court's view of the Program. When enacting S.B. 69, the Utah legislature rejected the drug companies' efforts to denigrate the 340B Program and those who rely on it.

For good reason. The contract pharmacy arrangements drug manufacturers honored for almost 30 years helped sustain hospitals and their patients. Nationwide, a quarter of hospitals' 340B benefit comes from drugs dispensed at contract pharmacies.[6]

340B savings allow hospitals to care for Utah's most vulnerable patients in a variety of ways. Look no further than the many declarations submitted with Defendants' Memo in Opposition to the Motion for a Preliminary Injunction (Defs. Opp. to Mot. for Prelim. Injunct'n). Together and separately, these declarations tell a powerful story: without the benefit they obtain from drugs delivered to community pharmacies, 340B hospitals and Federally Qualified Health Center will

---

[6]    340B Health, *Restrictions on 340B Contract Pharmacy Increase Drug Company Profits but Lead to Lost Savings, Patient Harm, and Substantial Burden for Safety-Net Hospitals* 8, https://www.340bhealth.org/files/Contract_Pharmacy_Survey_Report_March_2 023.pdf.

have to curtail vital healthcare services or eliminate them entirely. Defs. Opp. to Mot. for Prelim. Injunct'n (Dkt. No. 29) 17-24. Utah patients will become sicker as PhRMA becomes richer.

Contract pharmacy arrangements are especially important because fewer than half of 340B hospitals operate in-house pharmacies.[7] Even fewer—only one in five 340B hospitals—have in-house "specialty" pharmacies, which many insurers require for the dispensing of "specialty" drugs. These drugs are typically used to treat chronic, serious, or life-threatening conditions, and are generally priced much higher than non-specialty drugs.[8] Thus, 340B hospitals typically *must* contract with at least one specialty pharmacy outside of its in-house pharmacy.[9]

Big Pharma's assault on contract pharmacy relationships drastically reduces the savings that Utah's 340B hospitals rely on and jeopardizes the hospitals' ability to provide valuable services to their patients.

## **ARGUMENT**

### I.    **PhRMA'S SUPREMACY CLAUSE CLAIM FAILS.**

#### A.    **PhRMA Lacks a Cause of Action to Assert Federal Preemption.**

In its first claim for relief, PhRMA asserts a cause of action for "Federal Preemption Under the Supremacy Clause, U.S. Const. art. VI, cl. 2 and the Federal 340B Statute." Complaint

---

[7]    340B Health, *Drugmakers Pulling $8 Billion Out of Safety-Net Hospitals: More Expected as Growing Number Impose or Tighten 340B Restrictions* 2, https://www.340bhealth.org/files/Contract_Pharmacy_Financial_Impact_Report_July_2023.pdf.

[8]    Adam J. Fein, Drug Channels Institute, *Insurers + PBMs + Specialty Pharmacies + Providers: Will Vertical Consolidation Disrupt Drug Channels in 2020?* (Dec. 12, 2019), https://www.drugchannels.net/2019/12/insurers-pbms-specialty-pharmacies.html; Specialty Drug Coverage and Reimbursement in Medicaid, HHS Office of Inspector General, https://oig.hhs.gov/reports-and-publications/workplan/summary/wp-summary-0000255.asp.

[9]    340B Health, *supra* note 5, at 7 (citing Adam J. Fein, Drug Channels Institute, *The 2022 Economic Report on U.S. Pharmacies and Pharmacy Benefit Managers* (Mar. 2022)) https://drugchannelsinstitute.com/files/2022-PharmacyPBM-DCI-Overview.pdf.

(Compl.) (Dkt. No. 1) 42. But such a claim fails at the outset because, as the Supreme Court has explained, the Supremacy Clause "does not create a cause of action" through which a plaintiff may claim that state law is preempted. *Armstrong v. Exceptional Child Ctr., Inc*., 575 U.S. 320, 325 (2015); *accord Safe Sts All. v. Hickenlooper*, 859 F.3d 865, 900 (10th Cir. 2017) (applying *Armstrong*).

PhRMA also cannot challenge S.B. 69 as preempted through a claim in equity.[10] A "threshold inquiry" for such an equitable claim is whether the federal statute gives the plaintiff "a federal right of [its] own to vindicate," *Safe Streets All.*, 859 F.3d at 903, which requires that the statute be "phrased in explicit rights-creating terms." *Gonzaga University v. Doe*, 536 U.S. 273, 287 (2002); *see also Safe Streets All.*, 859 F.3d at 902–03 (relying on *Gonzaga*). There is no "rights-creating" language in the 340B statute that could give rise to PhRMA's claim that S.B. 69 is preempted. In fact, drug companies' only arguable rights under the 340B statute run against covered entities, *see id.* § 256b(d)(3)(A), but even there, the statute plainly forecloses a judicial cause of action by specifying an "*administrative* process" through which HHS is charged with "reviewing and *finally resolving*" any claimed violations, *id.* § 256b(d)(3)(B)(i) (emphasis added); *see also Armstrong*, 575 U.S. at 329 (noting that "the express provision of an administrative remedy" supported conclusion that statute "preclude[d] private enforcement . . . in the courts").

PhRMA also has no cause of action under the 340B statute. The Supreme Court has explicitly held that the statute creates no private right of action for covered entities, and the Court's rationale applies equally to manufacturers. *See Astra USA, Inc. v. Santa Clara Cty., Cal.*, 563 U.S.

---

[10]    Such a claim in equity is "quite apart from any cause of action conferred by the Supremacy Clause." *Armstrong*, 575 U.S. at 327. Here, although PhRMA cites *Ex parte Young* as an alleged basis for the Court's jurisdiction, *see* Compl. ¶ 32, it asserts its first claim for relief "Under the Supremacy Clause and the Federal 340B Statute." *Id.* at 42.

110, 117(2011) ("Congress vested authority to oversee compliance with the 340B Program in HHS and assigned no auxiliary enforcement role to covered entities.").

Because PhRMA has no valid cause of action through which to bring a claim that Utah's state law is preempted, its first claim for relief fails and should be dismissed.

### B.    S.B. 69 Is Not Preempted.

Even if PhRMA could somehow assert a preemption challenge against Utah in federal court, the claim would fail nevertheless because S.B. 69 is not preempted, as numerous courts across the country, including the Eighth Circuit, have already found when analyzing analogous statutes.[11] "'The purpose of Congress is the ultimate touchstone' of pre-emption analysis." *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992) (quoting *Malone v. White Motor Corp.*, 435 U.S. 497, 504 (1978)). In every preemption case, "and particularly in those in which Congress has 'legislated in a field which the States have traditionally occupied,'" *Lohr*, 518 U.S. at 485, courts "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress[,]" *City of Columbus v. Ours Garage & Wrecker Serv., Inc.*, 536 U.S. 424, 432 (2002)). PhRMA has the burden to show that Congress intended to preempt S.B. 69. *See PhRMA v. Walsh*, 538 U.S. 644, 661–62 (2003). Unlike state laws that intrude into uniquely federal areas such as immigration and foreign relations,[12] S.B. 69 is presumptively *not* preempted. PhRMA therefore must demonstrate

---

[11]    *E.g.*, *PhRMA v. McClain*, 95 F.4th 1136, 1143–45 (8th Cir.), *cert. denied*, 145 S. Ct. 768 (2024); *Novartis Pharms. Corp. v. Fitch*, 738 F. Supp. 3d 737, 747 (S.D. Miss. July 1, 2024); *AstraZeneca Pharms. LP v. Fitch*, No. 1:24-cv-196-LG-BWR, 2024 WL 5345507, at *4–9 (S.D. Miss. Dec. 23, 2024); *Novartis Pharms. Corp. v. Bailey*, No. 2:24-cv-04131-MDH, 2025 WL 489881, at *2–4 (W.D. Mo. Feb. 13, 2025)

[12]    *See, e.g.*, *Arizona v. United States*, 567 U.S. 387 (2012); *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000).

Congress's "clear and manifest purpose" to supersede Utah's historic authority to regulate in the public health arena, *Lohr*, 518 U.S. at 485 (citation omitted), which it cannot do.

> ### 1.    Congress Did Not Create or Occupy a Field When It Established the 340B Program.

Field preemption occurs only in specifically defined instances, "when federal law occupies a 'field' of regulation 'so comprehensively that it has left no room for supplementary state legislation.'" *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 479 (2018) (citation omitted). Indeed, "[t]he subjects of modern social and regulatory legislation often by their very nature require intricate and complex responses from the Congress, but without Congress necessarily intending its enactment as the exclusive means of meeting the problem." *Dublino*, 413 U.S. at 415. Thus, the Supreme Court has rejected "the contention that pre-emption is to be inferred merely from the comprehensive character" of federal provisions. *Id.* If it did, every time Congress created a federal program, it would create an exclusively federal field into which States cannot intrude. But that is not the law. *Id.* And with the 340B program, "a detailed statutory scheme was both likely and appropriate, completely apart from any questions of pre-emptive intent." *Id.* PhRMA cites *no authority* to support the notion that Congress intended to create (or occupy) this purported 340B "field"[13] other than the comprehensiveness of the statute and *dicta* in an *amicus* brief filed by the U.S. Government in 2010. But that *amicus* brief states only that an administrative

---

[13]    PhRMA relies on *Astra USA, Inc. v. Santa Clara County*, 563 U.S. 110 (2011), which does not address preemption. Moreover, the Western District of Louisiana has persuasively explained why *Astra* is inapposite. *PhRMA v. Murrill*, Nos. 6:23-cv-00997, 6:23-cv-01042, 6:23-cv-01307, 2024 WL 4361597, at *7 (W.D. La. Sept. 30, 2024). Put simply, the *Astra* Court's hesitance to allow "potentially thousands of" private parties to sue to correct "errors in manufacturers' price calculations" has no bearing on whether *States* can fill gaps in federal law regarding the delivery of 340B drugs. *Astra,* 563 U.S. at 114. Indeed, the only mention of preemption in *Astra* is in a footnote concerning a different federal program, the Medicaid Drug Rebate Program. *Id.* at 120 n.5.

procedure to resolve claims by covered entities to provide refunds was intended to be exclusive and specifically notes that procedure does not apply to all claims involving the 340B Program. Br. For U.S. as *Amicus Curie* 2010 WL 4717264, at *10 (U.S. Nov. 19, 2010). Indeed, the Tenth Circuit has confirmed that there is no evidence that "Congress intended the federal government to exclusively occupy the field of prescription drugs in general." *In re MDL 2700 Genentech Herceptin (Trastuzumab) Mktg. & Sales Prac. Litig.*, 960 F.3d 1210, 1225 (10th Cir. 2020). Accordingly, PhRMA's field preemption claim fails.

### 2. *S.B. 69 Does Not Conflict with the 340B Statute.*

As in lawsuits challenging an analogous Louisiana statute, "[i]n arguing conflict preemption, [PhRMA] re-urge[s] many of the same arguments [it] urge[d] with respect to [its] field preemption claims." *See PhRMA v. Murrill*, 2024 WL 4361597, at *8 (W.D. La. Sept. 30, 2024). These re-packaged arguments fail for the same reasons identified by the Louisiana district court.

In essence, PhRMA tries to transform the federal statute's silence about delivery into an intentional congressional decision to preempt state regulation. That is not the law in this Circuit. *See Paul*, 906 F.2d at 1475 n.8 ("Congressional silence will not be presumed to mandate preemption. On the contrary, it will not be presumed that a federal statute was intended to supersede the exercise of the power of the state unless there is a clear manifestation of intent to do so." (citation and internal quotation marks omitted)); *Integrity Mgmt. Int'l, Inc. v. Tombs & Sons, Inc.*, 836 F.2d 485, 494 (10th Cir. 1987) ("The presumption against preemption is particularly strong when Congress is silent."). Nor is it the law elsewhere.[14]

---

[14]    *E.g.*, *Conway v. United States*, 997 F.3d 1198, 1211 (Fed. Cir. 2021) ("Combined with the presumption against preemption, Congress' silence is powerful evidence that Congress did not intend to preempt state law fixing creditors' rights during insolvency." (citation and internal quotation marks omitted)); *Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1143 (9th

Thus, the Louisiana district court put it well when it held that "if Section 340B does not address contract pharmacies or the relationship between covered entities and their contract pharmacies, a state statute that specifically addresses contract pharmacies cannot conflict with Section 340B." *PhRMA v. Murrill*, 2024 WL 4361597, at *8; *see also McClain*, 95 F.4th at 1143 ("Congress's decision not to legislate the issue of pharmacy distribution indicates that Section 340B is not intended to preempt the field.")

When conducted properly, a conflict preemption analysis requires parties to demonstrate that the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941). This is a "high threshold," *Chamber of Com. of U.S. v. Whiting*, 563 U.S. 582, 607 (2011), and PhRMA comes nowhere close to meeting it. The 340B statute was passed to help covered entities "reach[] more eligible patients and provid[e] more comprehensive services." *Am. Hosp. Ass'n v. Azar*, 967 F.3d 818, 822 (D.C. Cir. 2020) (internal quotation omitted), *rev'd on other grounds sub nom.*, *Am. Hosp. Ass'n v. Becerra*, 596 U.S. 724 (2022). S.B. 69, in turn, enables 340B providers to continue to benefit from contract pharmacy arrangements and thereby offer expanded healthcare to their

---

Cir. 2015) ("Silence, without more, does not preempt—'a clear and manifest purpose of preemption is always required.'"); *Planned Parenthood of Indiana, Inc. v. Commissioner of Indiana State Dept. Health*, 699 F.3d 962, 985 (7th Cir. 2011) ("As we have noted, congressional and regulatory silence usually *defeats* a claim of preemption, not the other way around.") (emphasis in the original); *Iowa, Chicago & Eastern R.R. Corp. v. Washington County, Iowa*, 384 F.3d 557, 561 (8th Cir. 2004) ("ICCTA did not address these problems. Its silence cannot reflect the requisite clear and manifest purpose of Congress to preempt traditional state regulation of public roads and bridges that Congress has encouraged in numerous other statutes.") (citation and internal quotation marks omitted); *Schafer v. American Cyanamid Co.*, 20 F.3d 1, 6 (1st Cir. 1994) ("Pre-emption law, for example, cautions us against finding that a congressional act pre-empts a state law through silence."); *Camps Newfound/Owatonna, Inc. v. Town of Harrison*, 520 U.S. 564, 616 (1997) (Thomas, J., dissenting) ("Even where Congress has legislated in an area subject to its authority, our pre-emption jurisprudence explicitly rejects the notion that mere congressional silence on a particular issue may be read as preempting state law.").

patients. Therefore, not only does S.B. 69 not interfere with Congress's 340B scheme; it "furthers" it. *CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 82 (1987); *McClain*, 95 F.4th at 1144–45; *PhRMA v. Murrill*, 2024 WL 4361597, at *9 (concluding that an analogous State statute "arguably *advances* Congress' objectives with respect to the Section 340B program.").

(a)     *S.B. 69's Restrictions on Claims Data Are Not Preempted*

PhRMA's claim that restrictions on claims data reporting requirements are preempted fails for three reasons. *First,* the 340B statute is silent as to claims data reporting, and accordingly, States may legislate in this statutory gap. *Second,* in arguing that its members are entitled to receive claims data as a precondition to dispensing 340B drugs, PhRMA essentially advocates for manufacturer-run compliance programs, which turns the 340B statute's compliance framework on its head and flies in the face of Health Resources and Services Administration's (HRSA) longstanding 1994 guidance. *Third,* in any event, PhRMA is incorrect that manufacturers must be able to impose their own claims data reporting requirements to access 340B's audit and ADR processes.

PhRMA cites to no federal statutory provisions conferring on drug manufacturers the ability to establish their own claims data reporting requirements *because there are none.* Instead, PhRMA relies on an inapposite case from the D.C. Circuit, which analyzed the federal 340B statute, not any State law. In *Novartis,* 102 F.4th 452, the D.C. Circuit found that the federal 340B statute did not bar a drug manufacturer from requiring covered entities to provide claims data for contract pharmacy orders. *Id.* at 463. Critically, the D.C. Circuit did not hold that the federal 340B statute affirmatively required providers to submit such claims data as a precondition for covered entities to receive 340B pricing or delivery. This is because the statute is *silent* as to claims data reporting. *Novartis* also said nothing whatsoever about State law, which was not at issue in that case. The D.C. Circuit was only interpreting the federal 340B statute. In fact, when that case was

14

filed, no State had attempted to fill the statutory gaps that the D.C. Circuit identified in the federal 340B statute.

Since then, however, States like Arkansas and Utah have filled the federal statutory gap. And the Eighth Circuit has persuasively ruled that states may legislate on issues that 340B does not cover. *PhRMA v. McClain,* 95 F.4th at 1142 (quoting 58 F.4th at 703 (3d Cir. 2023) (finding that "the 340B Program 'is silent about delivery' and distribution of pharmaceuticals to patients," so Arkansas may prohibit manufacturers from establishing contract pharmacy restrictions)). Put simply, once PhRMA accepts the premise of *Novartis* (as it seemingly does and must) that there is a statutory silence with respect to manufacturer-imposed claims data requirements, then *McClain* persuasively explains why Utah is not barred from filling it.

PhRMA's arguments for claims data should also be rejected because it effectively argues that manufacturers may impose manufacturer-run compliance programs, which conflict with the compliance provisions in the 340B statute and HRSA guidance. By law, the 340B program puts the burden of ensuring compliance on manufacturers and HHS and protects covered entities from sharing this burden. *See* 42 U.S.C. § 256b(a)(5)(C) (allowing audits of covered entity compliance only at "the Secretary's or manufacturer's expense"). Accordingly, HRSA's initial guidance confirmed that "[a] manufacturer may not condition the offer of statutory discounts upon an entity's assurance of compliance with section 340B provisions." Final Notice Regarding Section 602 of the Veterans Health Care Act of 1992 Entity Guidelines, 59 Fed. Reg. 25,110, 25,113 (May 13, 1994).

Finally, S.B. 69 will not prevent drug companies from meeting the requisite "reasonable cause" standard to conduct an audit. Under HRSA guidance, when a manufacturer wishes to conduct an audit of a covered entity, it must demonstrate "reasonable cause," defined broadly to

mean that a reasonable person could believe that a covered entity may have violated a requirement of section 340B(a)(5) (A) or (B) of the Public Health Services Act. *See* Manufacturer Audit Guidelines and Dispute Resolution Process, 61 Fed. Reg, 65,406, 65,409 (Dec. 12, 1996).

HRSA's guidance and practice confirm that the "reasonable cause" threshold that a drug manufacturer must meet before auditing a covered entity is a modest one. According to long-standing HRSA guidance, manufacturers can satisfy this standard in various ways, including by pointing to "[s]ignificant changes in quantities of specific drugs ordered by a covered entity and complaints from patients/other manufacturers about activities of a covered entity[.]" 61 Fed. Reg at 65,406. Critically, *Amici* are not aware of an instance when HRSA has *ever* required the claims or utilization data that the pharmaceutical companies now demand to initiate an audit. Nor has HRSA ever expected that a manufacturer would have access to claims data until *after* it conducted an audit. Tellingly, PhRMA *cannot point to a single instance* of HRSA rejecting a manufacturer's audit plan due to the absence of claims data, and we are aware of none.

The audit process designed by federal statute does not contemplate companies requiring hospitals to *prospectively* turn over massive amounts of data as a precondition to receiving 340B discounts. Instead, the statutory audit process is meant to *retrospectively* measure a covered entity's compliance *after* 340B transactions have occurred. Indeed, longstanding HRSA guidance forbids manufacturers from "condition[ing] the offer of statutory discounts upon an entity's assurance of compliance with section 340B provisions." Final Notice Regarding Section 602 of the Veterans Health Care Act of 1992 Entity Guidelines, 59 Fed. Reg. 25,110, 25,113 (May 13,

1994); *see* Health Res. & Servs. Admin., 340B Drug Pricing Program Notice, Release No. 2011 – 1.1, Clarification of Non-Discrimination Policy (2012) (same).[15]

At bottom, for more than thirty years, the same agency that established and oversees the "reasonable cause" standard has taken the position that manufacturers *cannot* condition discounts on 340B compliance—exactly what PhRMA admits it wishes to do here. It is therefore difficult to understand how a State law barring such preconditions could be an obstacle to HRSA's own compliance and audit processes.

*(b)      S.B. 69 Regulates Delivery, Not Price.*

PhRMAs's argument that S.B. 69 regulates 340B drug price, or the "offer" that manufacturers provide covered entities, belies the language of the statute, which confirms that it is actually about the delivery of 340B drugs. S.B. 69 simply bars drug companies from discriminating between delivery locations for patients of Utah 340B hospitals. *See* Utah Code § 31A-46-311(2)(a)(iii). S.B. 69 requires drug companies to let 340B hospitals within State borders determine the appropriate shipping address for their 340B patients. That is precisely why the Eighth Circuit upheld a similar statute, holding that Arkansas' law "does not set or enforce discount pricing." *McClain*, 95 F.4th at 1145.

Indeed, by regulating the delivery of 340B drugs, Utah is not "forcing manufacturers to make transactions at the federal 340B price when those very same transactions *would not* be required under the federal program alone." PhRMA Mot. for Prelim. Injunction 13. Operating within the precise metes and bounds of the 340B statute—which is silent as to delivery and contract

---

[15]  HHS's analysis is precisely the type of agency interpretation that can assist this Court in construing the 340B statute. *See Bondi v. VanDerStock*, 145 S. Ct. 857, 874–75 (2025) ("[T]he contemporary and consistent views of a coordinate branch of government can provide evidence of the law's meaning.").

17

pharmacies—Utah is protecting its in-State hospitals' flexibility to decide *where* they want drugs that they have purchased to be delivered. The Third Circuit and D.C. Circuits' decisions in *Sanofi* and *Novartis* are not to the contrary. *Sanofi Aventis U.S. LLC,* 58 F.4th at 703; *Novartis Pharms. Corp. v. Johnson,* 102 F.4th at 460. While those courts permitted drug manufactures to place some reasonable conditions in the face of the federal law's "silence" about delivery, neither court addressed what the *States*, armed with their historic police powers over health and safety, may do in the face of that silence. *Id.*

If a Utah hospital wants to buy a particular medication, the drug companies will ship to an in-house hospital pharmacy without restriction. S.B. 69 simply ensures that those companies *also deliver* those drugs to the pharmacies with which its in-State hospitals have contracts, thereby making it easier for in-State hospitals to reach their patients closer to where they actually live. Nothing in federal law forbids Utah from making that policy decision.

Ultimately, the parties are only fighting about logistics. There is no dispute that 340B hospitals are entitled to buy covered drugs at the federally-mandated price for their patients. The parties only disagree about the delivery address, where a hospital warehouses a drug, and back-end inventory management. The federal statute is *silent* about these logistical subjects. Utah's law, by contrast, addresses *only* these subjects. For this reason, the Eighth Circuit got it exactly right when it held that the analogous Arkansas law "does not set or enforce discount pricing." *McClain*, 95 F.4th at 1145; *see also PhRMA v. Murrill*, 2024 WL 4361597, at *9 ("[D]iscounts are set by the federal government, not the State of Louisiana or Act 358. Act 358 addresses only contract pharmacies, a matter that is not addressed in Section 340B.").

(c)    *S.B. 69 Has Nothing to Do with Federal Efforts to Prevent Diversion.*

PhRMA's repeated mention of diversion of drugs to non-eligible patients is wholly irrelevant to S.B. 69. The Utah statute regulates only the *delivery* of a 340B drug that has been purchased by a 340B hospital. The question in any State action to enforce S.B. 69 is whether the manufacturer refused to deliver a drug purchased by a 340B hospital to a contract pharmacy, not whether that drug was diverted to an ineligible patient. The issue of diversion, which relates to dispensing drugs to a non-340B patient, is completely outside of the scope of the Utah law and therefore to this case.[16]

In any event, even if the diversion were an issue, the federal 340B statute requires that HRSA determine whether the 340B drug purchase complied with federal law *after the fact* either through an audit or in the *post hoc* Alternative Dispute Resolution process. 42 U.S.C. §§ 256b(d)(2)(B)(iv) & (3). Because the federal statute does not permit drug companies to take the law into their own hands *before delivery* to police suspected diversion,[17] the audit and ADR forums are where questions of diversion would be determined. As such, S.B. 69 and the federal 340B statute enforce different things and therefore do not raise the possibility of conflicting enforcement decisions. State laws that require drug companies to deliver 340B drugs to contract pharmacies (on the same terms as they deliver to in-house hospital pharmacies) will *never* raise questions of diversion since those will be addressed, per the 340B statute, in the federal processes *after* the

---

[16]    For that same reason, it is of no matter that S.B. 69 imposes different penalties than the 340B statute. Because S.B. 39 and the 340B statute are regulating different actions, it makes perfect sense that the remedies would also be different.

[17]    *E.g.*, *Astra.*, 563 U.S. at 113 (holding that Congress "assigned no auxiliary enforcement authority" to private actors); *Am. Hosp. Ass'n v. HHS*, No. 4:20-cv-08806, 2021 WL 616323, at *6 (N.D. Cal. Feb. 17, 2021) ("Congress made explicit that alleged 340B Program violations are to be first adjudicated by HHS through an established ADR process.").

drugs have been delivered to those contract pharmacies. There is simply no risk of conflicting determinations about diversion because that determination will be made long after 340B drugs are delivered to contract pharmacies and the narrow legal force of S.B. 69 (*i.e.*, a delivery mandate) has ceased.

Yet again, the Eighth Circuit and the district court in Louisiana correctly understood this distinction. *See McClain,* 95 F.4th at 1144 (comparing an analogous state statute that "ensures that covered entities can utilize contract pharmacies for their distribution needs" with HHS's jurisdiction over "different disputes," including "diversion of 340B drugs"); *PhRMA v. Murrill*, 2024 WL 4361597, at *8 ("[T]he Louisiana statute creates an enforcement mechanism, but that mechanism pertains solely to pharmaceutical companies' actions toward pharmacies who enter into contracts with covered entities under the Section 340B program. The Louisiana statute does not address the pharmaceutical companies' agreements with HHS or the pricing, diversion, or 'double dipping' restrictions addressed in the HHS' enforcement scheme.").

## II.    <u>S.B. 69 IS NOT VOID FOR VAGUENESS.</u>

A regulation is void for vagueness "if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or "authorizes or even encourages arbitrary and discriminatory enforcement." *United States v. Lesh*, 107 F.4th 1239, 1247 (10th Cir. 2024) (quoting *Hill v. Colorado*, 530 U.S. 703, 732 (2000)). That is not the case here.

PhRMA's void-for-vagueness challenge is meritless. That S.B. 69 does not include a definition of "interference" does not render the statute unconstitutionally vague, as two other district courts addressing analogous state statutes have already found.[18] *PhRMA v. Murrill*, 2024

---

[18]    Black's Law Dictionary defines "interference" as "[t]he act of . . . meddling in the affairs of others" or "[a]n obstruction or hindrance." *Interference*, Black's Law Dictionary (12th ed. 2024); *PhRMA v. Murrill*, 2024 WL 4361597, at *10-11. Merriam-Webster defines "interfere" as "to enter into or take a part in the concerns of others," "to interpose in a way that hinders or impedes[,]" or

WL 4361597, at *10-11 (holding that an analogous statute that failed to define "interfere" was not unconstitutionally vague); *PhRMA v. Fitch*, No. 1:24-cv-160-HSO-BWR, 2024 WL 3277365, at *15 (S.D. Miss. July 1, 2024). Drug "manufacturer[s] or distributor[s]"—the only entities subject to the provisions' prohibitions—can readily assess what conduct is prohibited by the statute's terms, including the term "interfere." If necessary, dictionaries can help provide the necessary clarity.[19] So do countless criminal and civil statutes that prohibit "interference" without expressly defining the term.[20] And to the extent there is any doubt, courts in the Tenth Circuit recognize the doctrine of *noscitur a sociis*, under which "a word is known by the company it keeps," *Levorsen v. Octapharma Plasma, Inc*., 828 F.3d 1227, 1231 (10th Cir. 2016), meaning that the term "interference" can be considered in the context of the surrounding words "deny," "restrict," and "prohibit." *See also Rosser v. Rosser*, 502 P.3d 294, 303 n. 9 (Utah 2021).

In any event, it is disingenuous for PhRMA to argue that S.B. 69 bars manufacturers from understanding what they are prohibited from interfering with. Complaint ¶54. PhRMA and drug manufacturers know that those contracts relate to the delivery of 340B drugs to pharmacies, and

---

"to act reciprocally so as to augment, diminish, or otherwise affect one another[.]" *Interfere*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/interfering.

[19]  Black's Law Dictionary defines "interference" as "[t]he act of . . . meddling in the affairs of others" or "[a]n obstruction or hindrance." *Interference*, Black's Law Dictionary (12th ed. 2024); *PhRMA v. Murrill*, 2024 WL 4361597, at *10-11. Merriam-Webster defines "interfere" as "to enter into or take a part in the concerns of others," "to interpose in a way that hinders or impedes[,]" or "to act reciprocally so as to augment, diminish, or otherwise affect one another[.]" *Interfere*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/interfering.

[20]  For example, there are numerous uses of the term "interfere" in the U.S. Code. *E.g.*, 15 U.S.C. § 77kk(c) ("[I]t shall be unlawful for [specified entity] . . . to do any act directly or indirectly which would interfere with or obstruct or hinder or which might be calculated to obstruct, hinder, or interfere with the policy or policies of the said Department of State or the Government of the United States . . ."); 18 U.S.C. § 245(b); 29 U.S.C. § 158(a); 29 U.S.C. § 2615(a)(1); 42 U.S.C. § 3617; 47 U.S.C. § 333. Thus, finding the term "interfere" to render S.B. 69 unconstitutionally vague would have vast repercussions throughout the various civil and criminal codes of Utah and the nation.

in fact, devotes pages of its brief describing how those contracts operate. Mot. for Prelim. Injunct'n. 6–9. The Utah Legislature specifically responded to drug manufacturers' efforts, since 2020, to restrict contract pharmacy arrangements.[21]

Courts must "interpret the relevant words not in a vacuum, but with reference to the statutory context, 'structure, history, and purpose.'" *Abramski v. United States*, 573 U.S. 169, 179 (2014) (internal citation omitted). Given this history and context, PhRMA knows exactly what the S.B. 69 seeks to prevent. Its feigned ignorance about the meaning of the term "interfere" cannot be taken seriously.[22]

## III.  S.B. 69 IS NOT AN UNCONSTITUTIONAL EXTRATERRITORIAL REGULATION.

PhRMA also claims that S.B. 69 runs afoul of the Commerce Clause, but PhRMA's claim (1) ignores the text and context of S.B. 69, (2) is squarely foreclosed by the Supreme Court's recent application of the dormant Commerce Clause in *National Pork Producers*, and (3) has been already been rejected by a district court evaluating challenges to contract-pharmacy statutes in other states. *See PhRMA v. Fitch*, 2024 WL 3277365, at *12–13.

*National Pork Producers* flatly rejected the "almost *per se*" extraterritoriality rule that PhRMA seeks, holding that the dormant Commerce Clause does *not* forbid "enforcement of state laws that have the "practical effect of controlling commerce outside the State[.]" *Nat'l Pork*

---

[21]  Nor does the term "interfere" violate drug manufacturers' First Amendment rights. Even assuming that their First Amendment rights are implicated, as explained *supra*, nothing in S.B. 69 prohibits drug manufacturers from auditing covered entities and their records relating to contract pharmacies or filing complaints through the ADR following an audit. *PhRMA*, 2024 WL 3277365, at *14 (S.D. Miss. July 1, 2024); *see also* Def's Opp. to Mot. for Prelim. Injunct'n 25.

[22]  For the same reasons, PhRMA's "proffer[ed] hypothetical" cannot serve as the basis for a vagueness challenge. *New Gaming Sys., Inc. v. Nat'l Indian Gaming Comm'n*, 896 F. Supp. 2d 1093, 1100 (W.D. Okla. 2012). "[S]peculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid in the vast majority of its intended applications," *Hill*, 530 U.S. at 733.

*Producers*, 598 U.S. at 371. Instead, the "very core" of its dormant Commerce Clause jurisprudence is the "antidiscrimination principle," *i.e.*, whether a state engages in "economic protectionism" by privileging in-state competitors over out-of-state competitors. *Id*. at 369.

Like "many (maybe most) state laws," S.B. 69 may indirectly impact "extraterritorial behavior" for drug companies that are headquartered outside of Utah. *Nat'l Pork Producers*, 598 U.S. at 374. But the statute does not *target* extraterritorial activity or privilege in-state actors over their out-of-state competitors; its prohibitions apply equally to in- and out-of-state sellers of drugs. PhRMA's attempt to revive the "extraterritoriality doctrine" so shortly after the Supreme Court rejected it, *id.* at 371, is foreclosed by *National Pork Producers*. For the same reasons, the Southern District of Mississippi rejected PhRMA's extraterritoriality challenge to that state's materially identical law. *PhRMA v. Fitch*, 2024 WL 3277365, at *13. This Court should do likewise.

In attempting to miscast S.B. 69 as discriminatory, PhRMA argues that it "privileges in-state interests by providing them monetary benefit not contemplated by Congress, while imposing a significant burden on out-of-state manufacturers." Compl. ¶ 144. Crucially, by referring vaguely to "in-state interests," PhRMA does not mean that it is benefiting in-state manufacturers, nor could it, as S.B. 69 does not refer to in-state manufacturers. The interests it refers to are the Utah covered entities that will benefit from contract pharmacies. But the dormant commerce clause doesn't prohibit disparate treatment "if the subjects of the treatment are not similarly situated." *Direct Mktg. Ass'n v. Brohl*, 814 F.3d 1129, 1143 (10th Cir. 2016); *Johnson & Johnson Vision Care, Inc. v. Reyes*, 665 F. App'x 736, 743 (10th Cir. 2016) (rejecting manufacturers' discrimination claim where the challenged state law regulated retailers, not manufacturers). PhRMA's allegation that S.B. 69 preferences certain *types* of businesses (hospitals and pharmacies) over others (drug manufacturers), even if true, does not suggest discrimination among "substantially similar

entities," and it therefore does not implicate the dormant Commerce Clause. *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 342–43 (2008) (citation omitted); *see also, e.g.*, *Exxon Corp. v. Governor of Md.*, 437 U.S. 117, 125 (1978) (rejecting dormant Commerce Clause challenge to state statute that allegedly favored in-state *retailers* over out-of-state *producers* because the state was not "discriminating against interstate commerce at the retail level").

Nor can PhRMA claim that S.B. 69 "regulat[es] conduct far outside of Utah's borders." Compl. ¶ 145. PhRMA attempts to argue that, because S.B. 69 does not explicitly limit its effect to Utah 340B hospitals, it is an unconstitutional extraterritorial regulation. *See* Compl. ¶ 141. This is unpersuasive for two reasons. *First*, courts in Utah, as in many other states, generally read the state's statues *not* to apply outside Utah's borders. *E.g., Reyes*, 665 F. App'x at 746 ("[u]nder a deeply rooted and longstanding canon of construction, statutes are presumed not to have extraterritorial effect.... [U]nless a statute gives a 'clear indication of an extraterritorial application, it has none.") (quoting *Nevares v. M.L.S.*, 345 P.3d 719, 727 (Utah 2015)). Accordingly, S.B. 69 is best read to apply only to covered entities (*i.e.*, hospitals) within Utah, and thus it does not implicate any prohibition on regulating wholly extraterritorial conduct. *See PhRMA v. Fitch*, 2024 WL 3277365, at *13 (explaining that because an analogous Mississippi law "does not exhibit a clear intent to regulate out-of-state conduct," that statute's "'general words' referring to 340B entities, manufacturers, and pharmacies are prima facie operative only as to persons or things within the territorial jurisdiction of Mississippi") (internal citation and quotation marks omitted). *Second*, even if the statute could be construed to reach 340B covered entities outside of Utah, Sub-Section 4 of S.B. 69 makes clear that "[n]othing in this section is to be construed to conflict with federal law." As such, PhRMA's reading of the law would be impermissible under Sub-Section 4.

## **CONCLUSION**

For these reasons and those set forth in Defendants' Brief, this Court should deny PhRMA's Motion for Preliminary Injunction and dismiss its Complaint.


Dated: June 3, 2025                            Respectfully submitted,

                                               ZUCKERMAN SPAEDER LLP

                                               */s/ William B. Schultz*
                                               William B. Schultz*
                                               Margaret M. Dotzel*
                                               Alyssa Howard Card*
                                               Courtney Christensen*

                                               *Counsel for Amici Curiae*

                                               STAVROS LAW P.C.

                                               /s/ Austin B. Egan
                                               Austin B. Egan
                                               *Local Counsel for Amici Curiae*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on June 3, 2025, I electronically filed this brief, which sent automatic notification to all counsel of record.

/s/ Austin B. Egan
Austin B. Egan