DAVID N. WOLF (6688)
LANCE SORENSON (10684)
JASON DUPREE (17509)
Assistant Utah Attorneys General
P.O. Box 140856
Salt Lake City, Utah 84114-0856
Telephone: (385) 584-6509
dnwolf@agutah.gov
lancesorenson@agutah.gov
jndupree@agutah.gov
*Counsel for Defendants*

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF UTAH

| | |
|---|---|
| PHARMACEUTICAL RESEARCH AND MANUFACTURERS OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>DEREK BROWN, in his official capacity; and JOHN PIKE, in his official capacity,<br><br>*Defendants*. | **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT PURSUANT TO RULE 12(b)(6)**<br><br>Case No. 2:25-cv-00308-RJS-DAO<br><br>Judge Robert J. Shelby<br><br>Magistrate Judge Daphne A. Oberg |

Defendants respectfully submit this Reply Memorandum in Support of their Motion to Dismiss the Complaint pursuant to Rule 12(b)(6).

## ARGUMENT

**1. PhRMA fails to state a preemption claim**

    1.1.   <u>The presumption against preemption applies here</u>

The presumption against preemption applies to PhRMA's claims. The Tenth Circuit holds that the presumption against preemption applies to "an area traditionally occupied by the States." *Ramsey Winch Inc. v. Henry*, 555 F.3d 1199, 1204 (10th Cir. 2009). "[T]he practice of

pharmacy is an area traditionally left to state regulation." *PhRMA v. McClain*, 95 F.4th 1136, 1143 (8th Cir. 2024) (quoting *Pharm. Care Mgmt. Ass'n v. Wehbi*, 18 F.4th 956, 972 (8th Cir. 2021)). As PhRMA concedes, SB69 governs pharmacy arrangements.[1] The presumption against preemptions thus applies here.

1.2. <u>Congress did not regulate the field of delivery nor contract pharmacies</u>

PhRMA fails to state a field preemption claim. The first page of PhRMA's Complaint correctly alleges that 340B is a pricing program.[2] Section 340B occupies the field of pricing, and SB69 regulates delivery. SB69 is not field preempted.

SB69 regulates delivery and interference with contract pharmacy arrangements. Multiple provisions of SB69 prohibit a manufacturer from interfering with a contract between a Covered Entity and a pharmacy. Utah Code § 31A-46-311(2)(a)(i)-(ii), (2)(c)(i)-(ii). SB69 also prohibits a manufacturer from restricting delivery to a pharmacy, or from placing certain conditions on delivery. *Id.* § 31A-46-311(2)(a)(iii), (2)(b)(ii). SB69 regulates delivery, not price.

PhRMA's Complaint confirms as much. PhRMA alleges that its contract pharmacy policies violate SB69.[3] PhRMA also alleges that its policies do not change who is eligible to purchase 340B drugs and do not change 340B pricing.[4] So, its policies are not pricing policies. PhRMA admits that its policies restrict delivery to contract pharmacies.[5] The only logical way that PhRMA's policies (which themselves regulate delivery and not price) can violate SB69 is if SB69 regulates delivery, and not price. It's that simple.

---

[1] Compl. ¶ 14.
[2] Compl. ¶ 3.
[3] Compl. ¶ 14.
[4] Pl.'s Opp., ECF No. 60, at 6 (citing Compl. ¶ 9 to assert the policies "permit[] covered entities to purchase an unlimited number of 340B-priced drugs").
[5] Pl.'s Opp. at 6 (citing Compl. ¶ 9 to assert the policies condition "delivery" to "contract pharmacies").

That's why the *McClain* court got it right in distinguishing between pricing and delivery. The Eighth Circuit noted that 340B is a "pricing program." 95 F.4th at 1141. The Court of Appeals also noted that the "340B Program 'is silent about delivery' and distribution of pharmaceuticals to patients." *Id.* at 1142 (quoting *Sanofi Aventis U.S. LLC v. HHS*, 58 F.4th 696, 703 (3d Cir. 2023)). Because the 340B Program "addresses discount pricing," but Arkansas' law "ensures that covered entities can utilize contract pharmacies for their distribution needs," Arkansas' law was not preempted. *Id.* at 1144.

PhRMA, in refreshing candor, explained to the *McClain* court that its policies are delivery policies. PhRMA asserted its members adopted policies placing "conditions under which they would deliver 340B-discounted drugs to contract pharmacies (as opposed to covered entities themselves)." Br. of Appellant PhRMA, *PhRMA v. McClain*, No. 22-2675 (8th Cir. Feb. 22, 2023), 2023 WL 2337833, at *3. PhRMA affirmed that its policies limit "deliveries to third-party contract pharmacies." *Id.* at *14. Because the Eighth Circuit recognized PhRMA's policies as delivery policies, the court understood that Arkansas' law, which prohibited such policies, regulated delivery.

The replenishment model doesn't change that conclusion. Under the replenishment model, the contract "pharmacy purchases its drug inventory at commercial prices, dispenses units to both 340B and non-340B patients, and uses software to track how many dispensed units are eligible for 340B discounts." *Eli Lilly & Co. v. Kennedy*, No. 21-CV-02608 (DLF), 2025 WL 1423630, at *3 (D.D.C. May 15, 2025). "Once enough 340B-eligible units to fill a package are dispensed, the pharmacy notifies the covered healthcare provider," meaning, the Covered Entity. *Id.* "The provider purchases a new drug package from a manufacturer at 340B prices, and that

3

package is shipped to the contract pharmacy." In other words, the Covered Entity orders 340B drugs from the manufacturers, and directs delivery to a contract pharmacy.[6]

SB69 does not regulate any part of the contract pharmacies' determination of whether prescriptions were eligible for 340B pricing. SB69 does not regulate the price of the Covered Entity's replenishment order. Once the Covered Entity makes that order, the Covered Entity must direct delivery of the drugs somewhere, whether it be to an in-house pharmacy or contract pharmacy. SB69 states that the manufacturer cannot prohibit delivery to a contract pharmacy. SB69 regulates delivery, not price.

PhRMA tries to compare this case to car sales, but that's just an attempt to evade confronting how these policies actually work. If a Covered Entity orders 100 units of a 340B drug from a PhRMA member and directs shipment to the Covered Entity's in-house pharmacy, the manufacturer ships the 100 units to the in-house pharmacy. Now let's say the same Covered Entity orders 100 units of a 340B drug and asks the manufacturer to ship 50 units to its in-house pharmacy and 50 units to the contract pharmacy. The manufacturer, under its policies, will refuse to *deliver* 50 units to the contract pharmacy and says all 100 units will be delivered to the in-house pharmacy. SB69 says the manufacturer cannot do that. SB69 thus regulates delivery. SB69 did not regulate the price of the drug, or who is eligible to purchase the drug. Just the delivery.

---

[6] PhRMA's allegations are not to the contrary. PhRMA points to a Dallas County contract that states that the "County shall purchase 340B drugs" from a drug manufacturer. Compl. ¶ 71. PhRMA also alleges that the contract pharmacies make 340B purchases "in the name of the Covered Entities." *Id.* ¶ 69. This still means the Covered Entity is making the purchase. PhRMA does not allege that anyone but the Covered Entity ever pays for replenishment orders, or that pharmacies place orders on their own behalf.

And Utah can regulate delivery, even if Section 340B's pricing regulations are comprehensive. PhRMA argues that *Arizona v. United States*, 567 U.S. 387 (2012), governs because Section 340B is "comprehensive." This Court's interpretation of *Arizona* indeed governs and demonstrates that states can regulate even in light of a comprehensive federal scheme. In *Utah Coal. Of La Raza v. Herbert*, the plaintiff claimed that Utah's immigration laws were field-preempted. 26 F. Supp. 3d 1125, 1130, 1133 (D. Utah 2014). The Constitution commits to Congress a broad power to regulate immigration and "Congress has enacted an extensive and complex scheme for regulating immigration and alien status." *Id.* at 1133.

This Court noted that the Supreme Court in *Arizona* never found "that state regulation of immigration was *per se* impermissible, despite ample opportunity to do so." *Id.* at 1134. Nor did the *Arizona* Court hold that Congress has the *exclusive* power to regulate immigration, just *significant* power. *Id.* at 1135 (citing *Arizona*, 567 U.S. at 416). Accordingly, a state can regulate immigration in some circumstances. *Id.* (citing *Arizona*, 567 U.S. at 416). For that reason, this Court rejected several preemption challenges to Utah's immigration laws, even though Congress enacted an extensive immigration framework. Applying this Court's "careful analysis" here, *id.* at 1134, Congress intended to occupy the field of 340B pricing, but left room for states to supplement delivery and contract pharmacy regulation.

Section 340B's silence as to delivery and contract pharmacy arrangements demonstrates that Congress did not intend to exclusively occupy those fields. If a matter is left unaddressed by Congress, such matter is subject to the disposition of state law. *La Raza*, 26 F. Supp. 3d at 1132-33; *O'Melveny & Myers v. F.D.I.C.,* 512 U.S. 79, 85 (1994). In other words, if the text is silent as to an issue, Congress left a "gap" for states to legislate that issue. PhRMA's Complaint

concedes that Section 340B is silent about delivery[7] and contract pharmacy arrangements.[8] *See also McClain*, 95 F.4th at 1142. Congress therefore left room for states to legislate those issues. SB69 is not field-preempted.

PhRMA's Complaint also demonstrates that Section 340B need not be applied and enforced uniformly nationwide as to every aspect, particularly as to delivery and contract pharmacy conditions. PhRMA concedes that not all of its members have delivery and contract pharmacy policies. Even for the ones that do, those policies "differ."[9] This is a tacit concession that Section 340B does not require national uniformity as to delivery regulations. Different states can adopt different laws regulating delivery. Because SB69 regulates delivery, and not price, SB69 is not field-preempted, and the Court should dismiss PhRMA's field preemption claim.

1.3. <u>SB69 does not expand 340B pricing</u>

PhRMA asserts that SB69 redefines the required 340B offer.[10] As alleged in PhRMA's Complaint, manufacturers must offer: 1) to each Covered Entity; 2) certain drugs; 3) at the 340B price.[11] SB69 does not change the list of Covered Entities, does not alter what drugs are subject to the 340B program, and does not change the 340B pricing formula. SB69 regulates delivery and contract pharmacy arrangements, issues to which Section 340B is silent. SB69 thus does not redefine Section 340B's "offer."

The *McClain* court's mention of title does not change this analysis. What mattered in *McClain* is that Covered Entities purchase the 340B drugs, contract pharmacies do not purchase

---

[7] Compl. ¶ 95.
[8] Compl. ¶ 97.
[9] Compl. ¶ 9. *See also id.* ¶ 87 ("certain" members adopted "different policies").
[10] Pl.'s Opp. at 14.
[11] Compl. ¶¶ 43, 47, 61.

the 340B drugs nor receive the 340B price discounts, and the contract pharmacies dispense the drugs. 95 F.4th at 1144. The Eighth Circuit did not rely on an agency relationship in its analysis that PhRMA's claims fail. Issues of title or agency are irrelevant to the conclusion that PhRMA has failed to state a claim that SB69 expands 340B pricing.

### 1.4. PhRMA fails to state a claim regarding claims data

PhRMA claims that SB69 prohibits its members from collecting claims data they need to implement Section 340B because SB69 prohibits manufacturers from conditioning delivery of a 340B drug on the provision of data.[12] Defendants moved to dismiss this claim and demonstrated why PhRMA failed to state a claim for relief.[13] PhRMA does not address this claim nor rebut Defendants' argument in its Opposition. On a motion to dismiss, "[t]he burden is on the plaintiff to" establish its complaint plausibly alleged sufficient factual matter to state a claim for relief. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). PhRMA has not met its burden to demonstrate it has stated a claim that it is entitled to relief. This claim must be dismissed.

The allegations in PhRMA's Complaint further demonstrate that PhRMA has not established it is plausible that SB69 will stand as an obstacle for PhRMA. Some of PhRMA's members are conditioning delivery on receiving claims data; some are not.[14] But PhRMA does not allege sufficient factual detail to establish that the members who are conditioning delivery on claims data are able to initiate audits. On the other hand, PhRMA does not allege that the members who don't require claims data asked HRSA to conduct an audit, but HRSA found that they didn't establish reasonable cause. PhRMA does not allege that HRSA has *ever* rejected a

---

[12] Compl. ¶¶ 132-33.
[13] Defs.' Mot. to Dismiss, ECF No. 28, at 17.
[14] Compl. ¶¶ 9, 87.

PhRMA's member request to conduct an audit.  PhRMA just offers speculation that SB69 will present an obstacle to conducting an audit.  Speculation does not state a claim for relief.

    1.5.    <u>Enforcement of SB69 does not conflict with Section 340B</u>

PhRMA contends that SB69 must be struck down because a Utah judge in a SB69 case will have to decide whether the drugs are covered outpatient drugs under 340B, whether they are eligible for 340B pricing, and whether the manufacturer provided the 340B price.[15]  These are not difficult questions.  Drug companies know which drugs they manufacture and thus which drugs are eligible for 340B pricing, whether they are covered outpatient drugs, and what is the 340B price.  PhRMA does not plausibly allege that a Utah judge cannot correctly determine these questions.

PhRMA also argues that a Utah judge will have to determine whether the entity is a 340B Covered Entity. Utah can look at HHS's publicly posted determination of that question.  PhRMA's Complaint alleges that HHS maintains a public website that lists eligible Covered Entities.[16]

Finally, PhRMA posits that a Utah judge will have to determine whether there has been diversion or a duplicate discount.  If a manufacturer believes there has been diversion or a duplicate discount, the manufacturer should raise those concerns to HRSA via the 340B ADR process.  42 U.S.C. § 256b(d)(3)(A).  If HRSA determines there has been diversion or a duplicate discount, Utah courts can defer to such determination.  PhRMA's assertion that Utah will have to decide diversion or a duplicate discount is pure speculation.  PhRMA's Complaint does not allege that any of its members have ever brought an allegation of diversion or duplicate

---

[15] Pl.'s Opp. at 11.
[16] Compl. ¶ 34.

discounting to HRSA, including during the decade that its members recognized multiple contract pharmacy arrangements. In other words, PhRMA's more than 30 members never wanted to raise diversion or duplicate discount allegations to HRSA, yet somehow, diversion and duplicate discount questions will flood Utah if SB69 goes into effect. That's implausible. SB69 can proceed without interfering with federal law.

Tellingly, PhRMA fails to allege any difficulty in the enforcement of Arkansas' law. For four years, PhRMA's members have complied with Arkansas' law akin to SB69 yet. 95 F.4th at 1139. Yet PhRMA does not allege that there has ever been an instance where Arkansas' enforcement of that law led to Arkansas entangling itself in exclusively federal questions. This critical omission demonstrates that PhRMA is speculating that enforcement of SB69 will cause conflict with federal law. And PhRMA asks this Court to prohibit SB69 from going into effect, without even seeing whether Utah courts can apply it in such a way as to not conflict with federal law, as SB69 itself requires. *See* Utah Code § 31A-46-311(4) ("Nothing in this section is to be construed to conflict with federal law."). The Supreme Court has cautioned against such pre-enforcement challenges. *Arizona*, 567 U.S. at 416 (finding it improper to enjoin state law without giving state courts opportunity to construe law's enforcement as not conflicting with federal law). This Court should dismiss PhRMA's preemption claim.

**2.    SB69 does not violate the Commerce Clause**

PhRMA argues, in support of its Dormant Commerce Clause claim, that Utah is "regulating commerce that occurs entirely outside of its borders."[17] But the Supreme Court rejected this same argument in *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356 (2023).

---

[17] Pl.'s Opp. at 18.

Petitioners in *Nat'l Pork* asserted that the "extraterritoriality doctrine" suggested an "almost *per se*" rule forbidding enforcement of state laws that have the "practical effect of controlling commerce outside the State," even when those laws do not purposely discriminate against out-of-state economic interests. *Id*. at 371-72.

The Supreme Court expressly rejected this argument. A state law does not violate the Commerce Clause merely because it may "have the 'practical effect of controlling' extraterritorial behavior." *Id*. The Court explained that when it previously spoke of extraterritorial effects, the challenged statutes in those cases "had a *specific* impermissible" extraterritorial effect of discriminating against out-of-state firms. *Id*. at 374. PhRMA has not alleged (and cannot show) any such impermissible discrimination here. SB69 applies with equal force to in-state manufacturers as it does to out-of-state ones.

The Supreme Court clarified that the "antidiscrimination rule . . . lies at the core of [the Court's] dormant Commerce Clause jurisprudence." *Id.* at 374. Applying this doctrine, the Supreme Court affirmed dismissal of the complaint in *Nat'l Pork* because the petitioners did not suggest that the challenged law's practical effects "would disclose purposeful discrimination against out-of-state businesses." *Id*. at 379. The same is true here. PhRMA does not assert anywhere in its Complaint that SB69's practical effects demonstrate purposeful discrimination against out-of-state businesses. Accordingly, PhRMA's dormant Commerce Clause claim fails as a matter of law.

PhRMA's reference to *Association For Accessible Medicines v. Ellison*, 2025 WL 1660112 (8th Cir. June 12, 2025), is inapposite. In that case, the court confined its holding to state statutes that attempted to regulate pricing, but not other regulations. Here, as set forth

herein, SB69 does not regulate pricing. The other two cases cited by PhRMA, *Styczinski* and *Frosh*, were decided prior to the Supreme Court's important clarifications of the Dormant Commerce Clause in *Nat'l Pork*. *Nat'l Pork* stands for the proposition that anti-discrimination lies at the heart of the Dormant Commerce Clause. Here, there is no discrimination against out-of-state manufacturers to the benefit of in-state manufacturers. PhRMA fails to state a Commerce Clause claim.

**3.    SB69 is not unconstitutionally vague**

PhRMA contends that its members won't have enough information about the substance of the pharmacy contracts to determine whether they are interfering with such contracts.[18] PhRMA's Complaint demonstrates otherwise. PhRMA alleges that its members limit the number of contract pharmacies with which "a Covered Entity may contract."[19] This conduct is clearly interfering with a contract or the ability to contract, and thus PhRMA's claim fails. *See Parker v. Levy*, 417 U.S. 733, 756 (1974) ("One to whose conduct a statute clearly applies may not successfully challenge it for vagueness.").

Furthermore, PhRMA's Complaint explains in detail how those contracts operate.[20] And PhRMA's Complaint concedes that it has obtained these contracts, and some of these contracts are also publicly available.[21] PhRMA does not demonstrate how "interfere" is vague in light of these allegations. This claim has no merit.

---

[18] Pl.'s Opp. at 20.
[19] Compl. ¶ 9.
[20] Compl. ¶¶ 64-63, 67-69.
[21] Compl. ¶ 71.

## CONCLUSION

For the reasons stated above, and in Defendants' Motion to Dismiss, this Court should dismiss PhRMA's Complaint.

DATED: June 30, 2025.

                                                 OFFICE OF THE UTAH ATTORNEY GENERAL

                                                 */s/ Jason Dupree*
                                                 JASON DUPREE
                                                 LANCE SORENSON
                                                 Assistant Utah Attorneys General

I, Jason Dupree, certify that this Reply Memorandum in Support of Defendants' Motion to Dismiss the Complaint pursuant to Rule 12(b)(6) contains 2,965 words, excluding the caption, face sheet, signature block, and certificate of service, and complies with DUCivR 7-1(a)(4).