# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

|  |  |
|---|---|
| PHARMACEUTICAL RESEARCH AND MANUFACTURERS OF AMERICA, <br><br> *Plaintiff,* <br><br> v. <br><br> JON PIKE, in his official capacity as Commissioner of the Utah Insurance Department and DEREK BROWN, in his official capacity as Attorney General of Utah, <br><br> *Defendants.* | **PLAINTIFF'S RESPONSE TO THE COURT'S MARCH 9, 2026 ORDER TO SHOW CAUSE** <br><br> Case No. 2:25-cv-00308-RJS-DAO <br><br> Chief Judge Robert J. Shelby <br><br> Magistrate Judge Daphne A. Oberg |

**INTRODUCTION**

Utah's recent amendments to Utah Code §31A-46-311 do not moot this case. Those minor modifications leave in place the same operative prohibitions that PhRMA challenges and that continue to inflict ongoing injury on its members. Even as amended, §31A-46-311 continues not only to prohibit PhRMA's members from imposing contract-pharmacy and claims-data conditions that they contend federal law permits, but also to subject them to the same regulatory and economic harms that supported standing at the outset. Because the Court can still grant effective declaratory and injunctive relief, Article III jurisdiction remains intact. That said, if the Court nonetheless continues to harbor doubts about mootness in light of the recent legislative amendment, the Court should grant PhRMA leave to file an amended complaint that challenges Utah's law as amended.

**BACKGROUND**

In March 2025, Utah enacted Senate Bill 69, codified at Utah Code §31A-46-311, to regulate the terms of participation in the federal 340B Program. That law "includes several prohibitions that apply explicitly" to drug manufacturers. Compl. (Dkt.2) ¶108. It provides that "[a] manufacturer may not … directly or indirectly restrict or prohibit" (i) pharmacies and 340B entities from contracting, "including by denying [the pharmacy or 340B entity] access to a drug that is manufactured by the manufacturer"; (ii) "the acquisition, dispensing, or delivery of a 340B drug to any location authorized by a 340B entity to receive the drug, unless prohibited by federal law"; or (iii) "a 340B entity from receiving 340B drug discount program pricing for a 340B drug, including by imposing a time limitation on a 340B entity to replenish or submit a claim for a 340B drug." Utah Code §31A-46-311(2)(a). S.B. 69 also instructs that "[a] manufacturer may not … directly or indirectly … require a 340B entity to" (i) "purchase a 340B drug from a supplier if the manufacturer would otherwise permit the 340B entity to purchase a drug that is not a 340B drug

from the supplier" or (ii) "submit any claim data, utilization data, or information about a 340B entity's contracts with a third-party as a condition for allowing the acquisition of a 340B drug by, or delivery of a 340B drug to, a 340B entity, unless the data or information sharing is required by federal law." *Id.* §31A-46-311(2)(b). Finally, S.B. 69 specifies that "[a] manufacturer may not … interfere with" (i) "a contract between a pharmacy and a 340B entity" or (ii) "the ability of a pharmacy and a 340B entity to enter into a contract." *Id.* §31A-46-311(2)(c).

S.B. 69 also defined several key statutory terms. It defined "340B drug" to mean "a drug purchased through the 340B drug discount program by a 340B entity." *Id.* §31A-46-102(1). It defined "340B drug discount program" as "the 340B drug discount program described in 42 U.S.C. Sec. 256b." *Id.* §31A-46-102(2). And, as originally enacted, S.B. 69 defined a "340B entity" as:

(a) an entity participating in the 340B drug discount program;

(b) a pharmacy of an entity participating in the 340B drug discount program; or

(c) a pharmacy contracting with an entity participating in the 340B drug discount program to dispense drugs purchased through the 340B drug discount program.

*Id.* §31A-46-102(3).

PhRMA sued the Utah Attorney General and the Commissioner of the Utah Insurance Department in their official capacities, alleging that S.B. 69 violates the Supremacy Clause, the Due Process Clause, and the Commerce Clause. Dkt.2 (Compl.) ¶1. The state moved to dismiss, and this Court granted that motion in part and denied it in part. Specifically, the Court granted the motion to dismiss as to PhRMA's "Due Process and Commerce Clause claims" but denied it as to PhRMA's "Supremacy Clause claim." Dkt.79 (Mem. Decision & Order) at 30. With respect to PhRMA's Supremacy Clause claim, the Court "agree[d]" with PhRMA that Utah's law "drastically expand[s]" a drug manufacturer's "obligations to 'provide access to 340B pricing to entities other

2

than those explicitly enumerated by Congress'" by sweeping in more entities into the 340B Program than federal law contemplated. *Id.* at 19; *see id.* at 20-21.

After the Court denied the state's motion to dismiss PhRMA's Supremacy Clause claim, Utah's legislature proposed a bill to amend §31A-46-311. The amended legislation did not alter the substantive provisions of the statute; instead, it principally modified the definitions of the terms in S.B. 69. It replaced the earlier definition of "340B entity" with a "340B covered entity," which carries the same meaning as "covered entity" under 42 U.S.C. §256b(a)(4). *See* House Bill 356, §1 (Exhibit A). The Governor signed the bill into law, and it took effect in February 2026.

On March 9, 2026, the Court ordered the parties to show cause why the case should not be dismissed as moot given H.B. 356's changes to the relevant portions of the Utah Code. Dkt.104.

## ARGUMENT

This case is not moot. "[A] case properly brought in the first instance only becomes moot where 'interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" *Bldg. & Constr. Dep't v. Rockwell Int'l Corp.*, 7 F.3d 1487, 1491 (10th Cir. 1993) (quoting *Cnty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)). "Demonstrating mootness" under that standard "is a 'heavy' burden," *Copar Pumice Co. v. Tidwell*, 603 F.3d 780, 792 (10th Cir. 2010) (quoting *Davis*, 440 U.S. at 631), "and that burden 'lies with the party asserting mootness,'" *id.* (quoting *Finstuen v. Crutcher*, 496 F.3d 1139, 1150 (10th Cir. 2007)). The state cannot carry that burden here—which may explain why it has not even tried to argue mootness, and indeed even filed a dispositive motion (that did not raise mootness) *after* the Governor had signed H.B. 356 into law, *see* Dkt.98.

1.    To be sure, *repealing* a statute ordinarily moots a case challenging it (at least when the only relief sought is forward-looking). *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1116 (10th Cir. 2010). And sometimes merely amending a statute will too. *See id.*

3

But unlike with repeals, "nothing about a statutory amendment per se moots a case." *Brusznicki v. Prince George's Cnty.*, 42 F.4th 413, 419 (4th Cir. 2022). Tweaks to statutory terms do not necessarily eliminate the Article III injury that the plaintiff allegedly suffers under the challenged law. *See, e.g.*, *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 661-63 (1993). Legislative modifications come in many forms and flavors, after all, and legislative amendments can still leave the essential kernel of the challenged law intact.

It thus makes sense that the Tenth Circuit has consistently declined to dismiss cases as moot when, even though intervening legislation modified the scope of the challenged law during the litigation, the amendments did not repeal or otherwise eliminate the challenged provision outright. *See, e.g.*, *Peck v. McCann*, 43 F.4th 1116, 1122 n.1 (10th Cir. 2022); *Hill v. Kemp*, 478 F.3d 1236, 1243 (10th Cir. 2007) (Gorsuch, J.). So long as a statutory amendment "does not actually correct the asserted constitutional problem," and so long as the requested relief would still redress that asserted constitutional problem, the litigation is not moot, *Smith v. Exec. Dir. of Ind. War Mem'ls Comm'n*, 742 F.3d 282, 287 (7th Cir. 2014) (collecting cases), because it is not "impossible for the court to grant any effectual relief whatever to a prevailing party," *Petrella v. Brownback*, 787 F.3d 1242, 1255 (10th Cir. 2015). Here, PhRMA's challenge to S.B. 69—codified in Utah Code §31A-46-311—remains live. Even as amended, the statute continues to inflict the same Article III injury as before. And the relief PhRMA requested in the complaint would still redress that ongoing injury. To the extent the Court disagrees, however, PhRMA respectfully requests that the Court grant leave to file the proposed amended complaint that is attached to this brief as Exhibit B. Allowing PhRMA to amend its complaint—rather than dismiss the suit outright—would conserve party resources and promote judicial economy by preventing unnecessary motions practice that may arise in the event that the suit is dismissed and the parties' negotiated forbearance agreement

4

(Dkt.101) is terminated, thereby prompting PhRMA to file another motion for a preliminary injunction once it files its new complaint. Regardless, the proper course is the most straightforward one, as the case is not moot.

2.    At the outset, there is no dispute that PhRMA had Article III standing from the beginning to bring its suit challenging S.B. 69. Standing exists when the plaintiff alleges they have suffered a cognizable injury that is traceable to the defendants and redressable by the requested relief. *See Rocky Mountain Wild v. Dallas*, 98 F.4th 1263, 1286 (10th Cir. 2024). And where (as here) the plaintiff is an organization asserting injuries on behalf of its members, it has standing to bring a lawsuit when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). PhRMA easily satisfied those requirements when it sued, and it continues to do so now.

Article III "standing is usually easy to establish" when a plaintiff challenges "[g]overnment regulations that require or forbid some action by the plaintiff" (or its members). *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 382 (2024); *accord Smith v. Albany Cnty. Sch. Dist. No. 1 Bd. of Trs.*, 121 F.4th 1374, 1377 (10th Cir. 2024). That is true here, as the challenged law "includes several prohibitions that apply explicitly to [drug] manufacturers." Dkt.2 (Compl.) ¶¶108-10. Those prohibitions force PhRMA's members to either stop including contract-pharmacy conditions in their 340B offers or face criminal and civil penalties. *See id.* ¶¶107-10, 112-14; Utah Code §§31A-46-401, 31A-2-308(1), (9). By "forc[ing] manufacturers to enter into many 340B transactions that they otherwise would not," Utah's law not only forces PhRMA's members to alter their practices, but also inflicts serious pocketbook harm. Dkt.2 (Compl.) ¶143; *see* also Dkt.16-

5

4872-2104-4962.v2

2 (Decl. of Patrick Costello) ¶18; Dkt.16-3 (Decl. of Justin McCarthy) ¶16.  In short, as the direct "objects of the challenged … policies," *Mirabelli v. Bonta*, 146 S.Ct. 797, 803 (2026) (per curiam), PhRMA's members suffer various ongoing injuries that are traceable to the defendants and redressable by declaratory and injunctive relief.  PhRMA therefore has standing to bring Supremacy Clause claims on their behalf.

3.     H.B. 356's recent amendments to Utah Code §31A-46-311 did not put an end to those ongoing Article III injuries.  The fundamental problem with Utah's law is that it forbids drug manufacturers from conditioning a purchase of 340B-priced drugs on the covered entity's agreement to the manufacturer's one-contract-pharmacy and claims-data conditions.  *See* Dkt.2 (Compl.) ¶129.  Although H.B. 356 narrows the number of entities entitled to receive 340B-priced drugs as compared to the earlier version of Utah's law, it does not eliminate that prohibition.  Now, as before H.B. 356, manufacturers remain forbidden as a matter of state law from imposing certain conditions on their offers to sell drugs at 340B prices that they believe they are entitled to include as a matter of federal law.  Section 31A-46-311 as amended continues to "forbid" PhRMA's members from taking certain actions, *FDA*, 602 U.S. at 382; *Mirabelli*, 146 S.Ct. at 803, and continues to force them to lose revenue, *see* Dkt.16-2 (Costello Decl.) ¶18; Dkt.16-3 (McCarthy Decl.) ¶16.  Thus, the dispute is not moot because the Court can still grant PhRMA "effectual relief" from those concrete injuries by declaring that the relevant provisions of §31A-46-311 are unlawful and enjoining the defendants from enforcing them against PhRMA's members.  *See Petrella*, 787 F.3d at 1255.

H.B. 356 also does not moot PhRMA's arguments that §31A-46-311 effectively prevents its members from accessing federal administrative dispute resolution procedures, *see* Dkt.2 (Compl.) ¶¶132-33, and that the enforcement provisions under Utah law conflict with the carefully

6

calibrated federal enforcement regime, *see id.* ¶¶134-35.  At most, H.B. 356's narrowing of §31A-46-311's definitions affects the *degree* of harm that PhRMA's members will suffer.  It does not eliminate that harm altogether.

The ongoing litigation in other states confirms as much.  PhRMA has brought more than a dozen different challenges to state laws that are more similar to Utah's law as amended than to the original version.  (That is to say, none of the other states' laws purported to require 340B-priced sales to pharmacies as such, rather than requiring 340B-priced sales in general (that are routed to pharmacies for dispensing to the covered entity's patients) in circumstances where manufacturers would not otherwise make those sales.)  Although states have occasionally contested PhRMA's standing to press some claims, no court has held that PhRMA lacks standing to press its preemption claim.  *See, e.g.*, *PhRMA v. Morrisey*, 760 F.Supp.3d 439, 450 n.5 (S.D. W. Va. 2024); *PhRMA v. Fitch*, 2024 WL 3277365, at *5-6 (S.D. Miss. July 1, 2024); *see also AstraZeneca Pharms. LP v. Weiser*, 2025 WL 3653161, at *5 (D. Colo. Dec. 17, 2025); *Novartis Pharms. Corp. v. Frey*, 2025 WL 2813787, at *6 (D. Me. Sept. 23, 2025).

That accords with the Supreme Court's decision in *Northeastern Florida Chapter of Associated General Contractors of America v. City of Jacksonville,* 508 U.S. 656 (1993).  There, the plaintiff challenged a city ordinance that provided "preferential treatment to certain minority-owned businesses in the award of city contracts."  *Id.* at 658.  Shortly after the Supreme Court granted certiorari to review the case, the City repealed the challenged ordinance and replaced it with an ordinance that differed from the original one in various respects.  *See id.* at 660-61.  The Court rejected the City's mootness argument, explaining that it did not matter for jurisdictional purposes "that the new ordinance differs in certain respects from the old one."  *Id.* at 662.  Mere modification of the challenged legal regime does not by itself render a dispute moot; "if that were

7

the rule, a defendant could moot a case by repealing the challenged statute and replacing it with one that differs only in some insignificant respect." *Id.* On the contrary, where a law as amended "disadvantages [the plaintiffs] in the same fundamental way" as before, the dispute is not moot even if the amended law may "disadvantage [them] to a lesser degree than the old one." *Id.*

Here too, Utah's law as amended continues to harm PhRMA in the same fundamental way as the original statute enacted by S.B. 69. Now as before, Utah's law directly regulates what actions PhRMA's members can and cannot take within the confines of the federal 340B Program. *See* Dkt.2 (Compl.) ¶¶128-35; *compare* 2025 Utah Laws ch. 514, §1 (codified at Utah Code §31A-46-311(2)), *with* 2026 Utah H.B. 356, §1 (amending §31A-46-311(2)). Now as before, Utah's law makes it unlawful for PhRMA's members to decline to condition their offers to sell at 340B prices on covered entities' agreement to one-contract-pharmacy and claims-data conditions. *See* Dkt.2 (Compl.) ¶¶129-30; *compare* 2025 Utah Laws ch. 514, §1 (codified at Utah Code §31A-46-311(2)), *with* 2026 Utah H.B. 356, §1 (amending §31A-46-311(2)). Now as before, then, Utah's law requires PhRMA's members to "act contrary to their [individually] established policies." *Arkansas v. EEOC*, 129 F.4th 452, 458 (8th Cir. 2025). And, now as before, that requirement will cost PhRMA's members severe pocketbook injury in reduced pricing that federal law does not require. *See* Dkt.2 (Compl.) ¶¶14, 46-47; Dkt.16-2 (Costello Decl.) ¶18; Dkt.16-3 (McCarthy Decl.) ¶16. Nothing about the recent statutory amendment erases that "prototypical" Article III injury. *See Collins v. Yellen*, 594 U.S. 220, 243 (2021). For all these reasons, the dispute is not moot.

The Tenth Circuit's decision in *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096 (10th Cir. 2010), does not stand for the proposition that a facial challenge to a law seeking prospective relief is mooted by an amendment to the challenged law. Dkt.104 n.7. That

4872-2104-4962.v2

case involved challenges to two biological opinions from a federal agency that no longer existed by the time that the Tenth Circuit heard the appeal. *See Rio Grande*, 601 F.3d at 1111. After the plaintiffs filed their complaint, the agency issued a new biological opinion that superseded the old ones. *See id.* Accordingly, neither an injunction nor a declaration would have any "effect in the real world because [the challenged] biological opinions have been superseded." *Id.* at 1112. Here, by contrast, the substantive provisions created by S.B. 69 have not been superseded. They have only been subject to "superficial" changes that do not cure the deficiencies with the challenged law. *Contra id.* at 1111. Unlike in *Rio Grande*, the requested injunction and declaration would provide "real world" relief to PhRMA's members because it would allow them to impose federally permitted claims-data and contract-pharmacy conditions on their offers to sell drugs at 340B prices.

Finally, the state's failure to press this point in its motion for judgment on the pleadings provides strong evidence that this dispute remains live. PhRMA has asked the Court to grant prospective relief that would allow its members to impose contract-pharmacy and claims-data conditions on their offers to sell drugs at 340B prices. *See* Dkt.2 (Compl.) Prayer for Relief. The state did not argue in its most recent dispositive motion—filed after H.B. 356 was enacted—that this dispute has become moot. Presumably, it did not do so because it recognizes that, even as amended, §31A-46-311 prohibits PhRMA's members from imposing contract-pharmacy and claims-data conditions. But to the extent the Court has any doubts about that, it should consider asking the state to clarify whether it thinks that the recent amendments continue to prevent PhRMA's members from imposing those types of conditions. Unless and until the state is willing to enter into a stipulation providing assurance that the defendants will not enforce those provisions against PhRMA's members vis-à-vis those conditions, this dispute remains live.

9

4.      All of that said, if this Court has any doubts about its ability to continue to adjudicate this case on the present complaint, PhRMA is willing to file an amended complaint that expressly challenges the recently amended version of Utah's law.  To that end, PhRMA has provided a proposed amended complaint, attached as Exhibit B, specifically challenging Utah law as amended by H.B. 356.  PhRMA respectfully requests that, insofar as the Court continues to have any mootness concerns, it should grant PhRMA leave to amend rather than dismiss the lawsuit.

                    Respectfully submitted,

ALLEN M. GARDNER (#7530)
PETER C. SCHOFIELD (#9447)
CHRISTOPHER M. SANDERS (#16939)
KIRTON MCCONKIE
Thanksgiving Park Four
2600 West Executive Parkway, Suite 400
Lehi, Utah 84043
Telephone: (801) 426-2100
agardner@kmclaw.com
pschofield@kmclaw.com
csanders@kmclaw.com

/s/ Erin E. Murphy
Erin E. Murphy (admitted *pro hac vice*)
Matthew D. Rowen (admitted *pro hac vice*)
Philip Hammersley (admitted *pro hac vice*)
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, Virginia 22314
Telephone:  (202) 742-8900
erin.murphy@clementmurphy.com
matthew.rowen@clementmurphy.com
philip.hammersley@clementmurphy.com

*Counsel for Pharmaceutical Research
and Manufacturers of America*

10

4872-2104-4962.v2